UNITED STATES, Appellee

v

JAMES F. DAVIS, Private E-2,
U. S. Army, Appellant

8 USCMA 196, 24 CMR 6

No. 9534

Decided August 9, 1957

First Lieutenant *Jerome H. Gerber* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel James M. Scott* and *First Lieutenant Bert M. Gross*.

First Lieutenant *Arnold I. Burns* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant William K. Davenport*.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The question before us is whether two pretrial statements by the accused were properly admitted into evidence. The accused contends that they are inadmissible because he was not informed, as required by Article 31, Uniform Code of Military Justice, 10 USC § 831, of the offenses of which he was purportedly suspected at the time the statements were requested from him.

On May 11, 1954, the accused, who had previously served with distinction both in World War II and in Korea, crossed the border from Schirnding, Germany, into Czechoslovakia. Shortly afterward, he made a tape recording which was broadcast by Radio Prague and Radio Bratislava. The recording contained statements indicating disloyalty to the United States. The accused also said that he had "decided to desert" the United States Army and "fight for peace" with the people of Czechoslovakia. The broadcasts were monitored by two stations of Radio Free Europe. Two years later, the accused returned to West Germany. In the early morning hours of May 5, 1956, he was met at the Stuttgart Railroad Station by a member of the American Counter Intelligence Corps who had been assigned to ex-amine the accused in connection with the Returned and Exchanged Captured American Personnel (World Wide) Program, (RECAP–WW). The agent knew that the Counter Intelligence Corps had a dossier on the accused which had been prepared in 1954 "after he went AWOL." It does not appear, however, that he knew that the accused had made a recording which had been broadcast. The accused was confined for the night. The next morning, he was taken to the 5th General Hospital for a medical examination.

Apparently during the time that the accused was in the hospital he was in a "cell." While there, he was questioned by the agent. Before the questioning began, the agent read Article 31, Uniform Code of Military Justice, 10 USC § 831, to the accused "sentence by sentence" from the Manual for Courts-Martial, United States, 1951. Each sentence was explained to the accused. At the conclusion of the reading, he was asked if he understood his rights and whether he had any questions. He replied that he understood and that he had no questions. He was again informed that, while the statements were to be "handled . . . in the intelligence field," anything that he said could

**197**

be used against him in a court-martial. No specific mention was made of desertion or disloyal statements, the offenses with which the accused was later charged. The agent "let . . . [the accused] tell his story" from the "time he went AWOL until the time he returned to Army . . . custody." After two or three days of oral questioning, the accused prepared a handwritten statement of his activities in Czechoslovakia. This statement was typed by a secretary and signed by the accused after he compared it with his handwritten statement.

At the trial the prosecution offered in evidence the typed statement, along with a supplemental statement. Defense counsel objected to their admissibility on the ground that the accused had not been informed of the "types of charges" against him. The objection was overruled, and the statement was admitted into evidence.

Article 31 of the Uniform Code of Military Justice, supra, provides that no person subject to the ■ Code "shall . . . request any statement from . . . a person suspected of an offense without first informing him of the nature of the accusation." The Article further provides that no statement obtained "in violation" of its provisions "shall be received in evidence" at a court-martial trial. If, therefore, an accused or person suspected of an offense is not informed of the nature of the known charges against him, it is error to admit his statement over his objection. Cf. United States v Fisher, 4 USCMA 152, 15 CMR 152. It is obvious, however, that if the examiner is without knowledge or suspicion that a particular offense has been committed by the person to be questioned, he cannot provide the preliminary advice required by Article 31. United States v Dickenson, 6 USCMA 438, 20 CMR 154. Although the evidence is meager, it still indisputably supports a finding that the Counter Intelligence Corps agent did not know that the accused had broadcast disloyal statements until after he had completed his interrogation of the accused and learned of the existence of the monitoring tapes made by Radio Free Europe. As to the disloyal statement charge, therefore, the law officer's ruling admitting the pretrial statement in evidence was clearly correct.

In regard to the desertion charge, the evidence is also sufficient to support a finding that the accused ■ was adequately made aware of the fact that he was at least suspected of that offense. Advice as to the nature of the charge need not be spelled out with the particularity of a legally sufficient specification; it is enough if, from what is said and done, the accused knows the general nature of the charge. United States v Grosso, 7 USCMA 566, 23 CMR 30; United States v Johnson, 5 USCMA 795, 19 CMR 91. A partial advice, considered in the light of the surrounding circumstances and the manifest knowledge of the accused, can be sufficient to satisfy this requirement of Article 31, supra. United States v Dickenson, supra; United States v O'Brien, 3 USCMA 105, 11 CMR 105.

It is reasonably inferable from the agent's testimony that he asked the accused to account for his activities "from the time he went AWOL." Accordingly, the accused was clearly oriented to that offense. Viewing that information in the light of the circumstances of his departure, and the length and the place of his stay, his absence assumes a very serious aspect. Thus, the law officer could find, from the lieutenant's remarks and the surrounding circumstances, that the accused was, in fact, "informed" of the nature of the offense of which he was suspected before he was questioned. United States v Dickenson, supra.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

FERGUSON, Judge (dissenting):

I dissent.

The majority of the Court this day repeals a provision contained in an Act of Congress. They do so ■ not because the provision ■ is unconstitutional or otherwise invalid but simply because they do not agree with it. Ar-

198

ticle 31(b), Uniform Code of Military Justice, 10 USC § 831, provides that an accused, or person suspected of an offense, shall not be interrogated or a statement requested "without first informing him of the nature of the accusation." This provision is clear. This provision is unambiguous. This provision should be strictly adhered to by this Court. In my view the fact that an accused is "clearly oriented" to an offense is not the same as "informing" him of the nature of the offense of which he is suspected. This is what Congress has clearly required.

Over a century ago, Chief Justice Marshall, in United States v Wiltberger, 5 Wheat 76, 95–96, stated the principle that:

". . . The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction."

The pertinent provision of Article 31 (b) here under consideration has now been construed out of existence.

The Central Intelligence Corps agent testified that he did not advise the accused of the general nature of any offense or offenses of which he was suspected. Furthermore, he testified that the statements were obtained not for court-martial purposes but "strictly for intelligence information." Defense counsel raised timely objection to the admission of these extrajudicial statements into evidence on the ground that the accused had never been advised of the nature of the offenses of which he was suspected. The case is thus clearly within the language and mandate of Congress as found in Article 31(b). If the military is dissatisfied with the provision here under consideration, then proper recourse is to petition Congress for its repeal. That, however, is no concern of ours, for Congress has spoken clearly and forcefully in Article 31. If this Article be not upheld—*in its entirety*—when it "pinches" as well as when it "comforts," then it might as well be abandoned altogether. I would reverse the decision of the board of review.