UNITED STATES, Appellee

v

CHARLES W. RICE, Airman First Class, U. S. Air Force, and RICHARD IGNET, Airman First Class, U. S. Air Force, Appellants

11 USCMA 524, 29 CMR 340

No. 13,689 and No. 13,758

Decided June 17, 1960

*Captain Norman K. Hogue* and *Lieutenant Colonel James L. Kilgore* were on the brief for Appellants, Accused.

*Colonel John F. Hannigan* and *Lieutenant Colonel Francis R. Coogan* were on the brief for Appellee, United States.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

At a common trial, the accused were convicted of conspiracy to commit larceny and of a number of specifications of larceny. The court-martial adjudged a sentence which included a bad-conduct discharge and confinement at hard labor for thirty-six months for each accused, but the convening authority modified the sentence to provide for confinement at hard labor for two years. A board of review affirmed the conviction. We granted the accused's separate petitions for further review in order to consider a claim that they were prejudiced by an erroneous instruction in regard to the voluntariness of pretrial statements made by them.

The prosecution introduced evidence tending to show that Rice, a finance pay clerk at Chaumont Air Force Base, France, overpaid Ignet on eleven occasions in amounts ranging from $69.00 to $325.00, during the period from September 16, 1958, to January 16,

1959. Also introduced into evidence, over defense objections on the ground they were obtained in violation of Article 31, Uniform Code of Military Justice, 10 USC § 831, were separate pretrial statements by the accused in which each admitted his participation in a scheme to make and receive over-payments, and from which it appeared that the deception was concealed by falsely noting on the pay records that Ignet was entitled to a "disturbance allowance." Before the court-martial retired to deliberate on the findings, the law officer instructed them as to their responsiblities in considering the pretrial statements. Among other things he said:

"At this time I should like to apprise the court of the accepted technique, I believe, of determining this question of voluntariness or involuntariness. It is known in law as an interlocutory question. Therefore, it is a question not of the ultimate in-

**525**

nocence or guilt of the accused, but one which must be determined prior to the time you come to the actual determination of that; so in your deliberations I shall instruct you that when you are voting on this interlocutory question, that is, the question of the voluntary character of the confessions, the members of the court shall vote orally, beginning with the junior in rank, and the question shall be decided by a majority vote. A tie vote on this question shall be a determination in favor of the accused. In other words, it will take a majority of you to determine that these statements were voluntarily received."

The instruction was given as a result of a request by Rice's counsel for a general instruction on the voting procedure. Although Rice's counsel and the trial counsel were apparently satisfied with the instruction, Ignet's lawyer indicated he believed the vote to determine the voluntariness of the pretrial statements was the same as that regarding the elements of the offense, and, accordingly, the issue should be decided by a two-thirds majority, not a simple majority. Manifestly, the challenged instruction is erroneous and the Government concedes as much. See Manual for Courts-Martial, United States, 1951, paragraph 140a. In United States v Jones, 7 USCMA 623, 23 CMR 87, we held that a disputed question as to compliance with the provisions of Article 31 must be decided by each member, in his own deliberation. However, an instructional error of this kind is not prejudicial to the accused if the evidence actually raises no issue of voluntariness or warning. United States v Cadman, 10 USCMA 222, 27 CMR 296; United States v Spivey, 8 USCMA 712, 25 CMR 216. This matter was considered by the staff judge advocate on the post-trial review and by the board of review. Both concluded that the evidence did not raise any issue requiring an instruction. We reach the same conclusion.

The accused were represented by separate defense counsel. Each counsel objected to the admission of the pre-

trial statement of his client on the ground that the accused were not, as required by Article 31(b), informed "of the nature of the accusation" before being interrogated by an Office of Special Investigations Agent, to whom he gave the incriminating statement. For present purposes, we need not consider the testimony of the agents. The accused testified in support of the objections, and their testimony presents the question in the light most favorable to them.

Ignet said the agent read Article 31 to him and informed him the proposed investigation concerned "an overpayment." While he saw the pay records in the agents hand at the beginning of the investigation, and was informed that the overpayment was to him, Ignet maintained he was not advised he was suspected of an offense; it was his impression they were "investigating Finance." Ignet further testified he would not have made a statement regarding the matter if he had been specifically told he was suspected of a criminal offense. However, he admitted he read a preliminary paragraph in the written statement. It recited that the *"nature of the offense"* under investigation was "pay and allowance matter."

Rice testified that the Office of Special Investigations agent who questioned him first read Article 31 and then told him he was "investigating unauthorized payments of pay and allowances." As did Ignet, Rice maintained he was not informed that he was suspected of participating in a criminal offense. If he had been so advised he "most certainly" would not have made a statement. He doubted "very much" whether he would have made a statement if he had been told he was suspected of an "illegal overpayment in Finance."

The purpose of informing a suspect or accused of the nature of the accusation is to orient him to the transaction or incident in which he is allegedly involved. It is not necessary to spell out the details of his connection with the matter under inquiry with technical nicety. United States v Davis,

8 USCMA 196, 24 CMR 6. Here both accused admitted they had been advised of the provisions of Article 31. Each also admitted he was informed that the inquiry concerned an overpayment to which he was a participant. According to their own testimony, therefore, each accused knew the nature of the transaction and that any incriminating statement he made in regard thereto could be used against him in a court-martial. Their respective contentions that they would not have made any statement if they had been aware they were suspected of an offense does not change the fact they were told of the nature of the investigation and advised of the provisions of Article 31. Neither accused contended at the trial that he did not understand the Article. United States v Hernandez, 4 USCMA 465, 16 CMR 39. The testimony of each accused, therefore, clearly establishes full compliance with the requirements of Article 31. Accordingly, the law officer's instructional error did not prejudice them in any way. United States v Trojanowski, 5 USCMA 305, 17 CMR 305. The decision of the board of review is affirmed.

Judges LATIMER and FERGUSON concur.