UNITED STATES, Appellee

v

HORST M. NITSCHKE, Private First Class (E-3),
U. S. Army, Appellant

12 USCMA 489, 31 CMR 75

No. 15,025

November 3, 1961

*First Lieutenant Robert L. Brosio* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel W. H. Blackmarr* and *First Lieutenant Burnett H. Radosh.*

*First Lieutenant Carl F. Wrench* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. McConaughy.*

## Opinion of the Court

KILDAY, Judge:

Accused is a German National who was serving in the United States Army in Germany at the time of this unfortunate incident. In August of 1960 he lost control of his automobile on a curve, crossed over to the wrong side of the road, and collided with an oncoming vehicle, causing the death of a passenger in the second car. He had been drinking. As a consequence he was, upon his trial by general court-martial, convicted for drunken driving and negligent homicide, violations of Articles 111 and 134, Uniform Code of Military Justice, 10 USC §§ 911 and 934, respectively. The findings were affirmed by intermediate appellate authorities, and accused's approved sentence extends to confinement at hard labor and partial forfeitures for twelve months, together with reduction to the lowest enlisted pay grade. We granted his petition for review on a single assignment of error, to consider whether an extrajudicial statement made by accused, and introduced in evidence against him at trial, was obtained in violation of Article 31, Uniform Code of Military Justice, 10 USC § 831. Some development of the facts is desirable in order to place the issue in perspective.

When accused was picked up at the scene of the accident by military authorities, he was taken to the dispensary for treatment of lacerations he sustained in the collision and, because he staggered and his breath smelled of alcohol, for a blood test. During the ride to the dispensary and after his arrival there, accused was distraught—in a state of emotional upset or shock, according to the doctor who treated him—and even attempted self-injury. Further, it is significant that accused had not learned English until he went to the United States in 1957 and, although he testified at trial without an interpreter, the evidence indicates he had at least some minor trouble with the English tongue.

Apparently in light of those facts, great care was taken to insure that accused understood his right to refuse to allow a blood specimen to be taken. During one of the periods in which accused seemed to have regained his composure, and after being satisfied he was oriented and able to comprehend their advice, a military policeman apprised him of his rights in English and the physician—who was himself a German fellow countryman of accused, a ci-

490

vilian employed by the Army—explained to him in German that he need not consent to a blood sample and, upon accused's inquiry, that unless he voluntarily submitted, none would be taken from him. The evidence showed that accused understood this advice and allowed the specimen to be taken. See United States v Hernandez, 4 USCMA 465, 16 CMR 39. We note parenthetically that the blood alcohol analysis disclosed severe intoxication.

Subsequently that same evening accused was interviewed by a criminal investigator, and the oral pretrial statement with which we are concerned in this case resulted. It was admitted into evidence over defense counsel's objection. Conceding that the agent otherwise appropriately warned accused of his rights before interrogating him, the defense asserts that the investigator deliberately failed to give him full information regarding the nature of the subject under inquiry. That contention is grounded on the following admitted facts. The agent was aware that a fatality had resulted from the collision in which accused was involved as a driver. Nonetheless, he informed accused simply that the statement was being taken in connection with investigation of the "traffic accident [in] which he was involved." And despite the fact that on one occasion during the interview accused inquired whether anyone was dead, the question was ignored and he was given no reply.

Article 31 (b) of the Uniform Code, supra, requires, in part, that a suspect be informed "of the nature of the accusation" before he may be interrogated. This codal mandate, the defense contends, was not satisfied, for the reason that the facts known to the investigator clearly suggested a charge of manslaughter might result against accused. So the argument goes, had accused been apprised a fatality had resulted or that the inquiry concerned a possible prosecution for manslaughter, he may not have made the questioned statement. Thus we are urged to reverse accused's conviction.

We are unable to accept the position pressed upon us, under the facts of this case, for there is more to the picture. Although accused asserted he was so distraught and preoccupied he had not understood the advice pertinent to the blood test, the prosecution's evidence indicated otherwise, and he appeared to be fairly calm and oriented by the time the agent questioned him. The latter, however, had seen and was aware of accused's earlier state of upset. Accordingly, he inquired of the German doctor who had treated accused whether there was any reason he should not be interviewed. The doctor said not, but that in light of accused's state he should not be told there was a fatality involved. It was because of the physician's advice that the agent did not tell accused someone had been killed in the accident.

Moreover, the evidence given at trial by accused himself sheds considerable light on our inquiry. The doctor, when he advised the investigator, believed accused had not been informed anyone had died, and made an entry to that effect in his records. Accused, however, testified that before he was taken to the dispensary, he heard someone say three—not just one—persons had been killed in the collision; that he felt it might be his fault these people were killed; and that this thought preyed on his mind and consumed his attention. Additionally, the witness who picked accused up at the scene of the accident testified, in describing his distressed emotional state and recounting possible suicidal actions by him, that accused kept repeating "Let me die, I want to die; I just killed someone."

With the record in that posture we are constrained to resolve the granted issue adversely to accused. As this Court held in United States v Davis, 8 USCMA 196, 24 CMR 6, in considering a similar question:

". . . Advice as to the nature of the charge need not be spelled out with the particularity of a legally sufficient specification; it is enough if, from what is said and done, the accused knows the general nature of the charge. United States v Grosso,

**491**

7 USCMA 566, 23 CMR 30; United States v Johnson, 5 USCMA 795, 19 CMR 91. A partial advice, considered in the light of the surrounding circumstances and the manifest knowledge of the accused, can be sufficient to satisfy this requirement of Article 31, supra. United States v Dickenson, supra; United States v O'Brien, 3 USCMA 105, 11 CMR 105."

See also the recent unanimous opinion in United States v Rice, 11 USCMA 524, 29 CMR 340, where it was noted that:

"The purpose of informing a suspect or accused of the nature of the accusation is to orient him to the transaction or incident in which he is allegedly involved. It is not necessary to spell out the details of his connection with the matter under inquiry with technical nicety."

Here the accused was not deceived by a canny investigator bent upon tricking him into sealing his doom through the subterfuge of misleading him as to the gravity of the situation. Nor did the agent lie to him. Rather, the agent simply failed to mention the fatality and ignored accused's question in reliance on the medical advice of one of the latter's fellow countrymen. The physician, it should be borne in mind, was the person who had previously insured that accused was warned in his native tongue before the blood specimen was volunteered; the doctor who, in light of accused's earlier distraught state and because he believed accused to be unaware of any death, was concerned lest he be agitated anew and his emotional condition aggravated. Clearly, accused was oriented by his interrogator as to the incident under inquiry, and in no wise was he misled to believe the accident was not so serious as it in fact was. Considering, then, the warning given and the reasons therefor in conjunction with accused's manifest independent knowledge or state of belief, as evidenced by his statements and his trial testimony, we hold that the questioned pretrial statement was not improperly admitted into evidence.

Obviously, under preferred practice, an investigator's advice to a suspect concerning the subject under inquiry should illuminate the nature of the suspected offense with such certainty as the information known to the agent permits. Cf. United States v O'Brien, 3 USCMA 325, 12 CMR 81; United States v Davis, supra. However, necessarily in questions of this type, each case must turn on its own facts and, to obviate possible misunderstanding, we point out that we here decide no more than that—only this case on its peculiar facts. When the evidence here before us is considered in its entirety, there is no risk that prejudicial error infested the warning accused was given by the investigator. United States v O'Brien, 3 USCMA 105, 11 CMR 105.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.