UNITED STATES

v.

**Airman Basic Henry L. WILLEFORD, FG 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, United States Air Force.**

ACM 22318.

U. S. Air Force Court of Military Review.

Sentence Adjudged 20 Oct. 1977.

Decided 17 April 1978.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Thomas S. Markiewicz.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr. and Major William Seckinger, USAFR.

Before EARLY, ORSER and ARROWOOD, Appellate Military Judges.

DECISION

ARROWOOD, Judge:

The accused was a member of the Arizona Air National Guard, ordered to active duty pursuant to 10 U.S.C. § 672(d) for a period of 213 days. The offenses were committed and the accused was tried and convicted during the active duty period. In such instance, the Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 11*d*, is fully applicable and court-martial jurisdiction having attached, continues for all purposes of trial, including the power to execute and enforce the sentence. *Carter v. McClaughry*, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed.2d 236 (1902); *United States v. Hamm*, 36 C.M.R. 656 (A.B.R.1965), pet. for review denied, 36 C.M.R. 541; *United*

*States v. Mansbarger*, 20 C.M.R. 449 (A.B.R. 1955).

Appellate defense counsel contend that the military judge erred in admitting statements obtained from the accused by the Air Force Office of Special Investigations (OSI) in violation of Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831. The substance of the argument with respect to this assignment of error is two-pronged. First, they aver that statements made prior to the proper Article 31 advice were not admissible and tainted all subsequent statements under the doctrine of fruit of the poisonous tree. Secondly, they aver that the accused, who was informed he was being questioned as to rape, was not fully advised as to the offenses he was suspected of committing.

The evidence submitted to the military judge to establish the admissibility of the statements made by the accused revealed that the OSI had received information from the victim that someone entered her room during the night and raped her. She also turned over to the OSI a wallet containing the accused's identification card which was discovered on the floor of her room immediately after the incident. The security police were sent to pick up the accused and bring him to the OSI office. They were instructed not to advise the accused of his rights or question him. Airman Balkema testified that following OSI's direction, he went to accused's room and knocked on the door. Accused opened the door and blurted out: "I've been expecting you; you've got my wallet; you've got enough on me." The accused was not advised of his rights at that time but was allowed to dress and transported to the OSI office where he waited to be questioned. After being there for about one and one half hours, the accused testified that "I made some comment about, you know, being in the girls' squadron the night before and Airman Balkema asked me why, what was going on, and what did I mean by it, and basically it was to the effect that I didn't know, I was lost and quite drunk, and so  .   .   .  Well, I was just talking, I wasn't really talking with anybody in particular." At that time

a security policeman accompanying Airman Balkema reminded him not to ask questions. He immediately advised the accused he did not have to say anything. The record does not reflect any other statements to the security police.

Approximately two hours after this occurred, OSI Agent Crutcher began questioning the accused. She advised him of his right to remain silent and his right to counsel. The only question as to the sufficiency of her advice is as to the offenses of which he was suspected. Rape was the only offense specified by the agent, but in the process of insuring herself that the accused understood his rights, Agent Crutcher testified, "I went into it in detail, explaining that his wallet had been found in one of the WAF dormitories, 7303, in a room belonging to one of the girls, and that this girl was alleging that he had come into her room earlier that morning on the 8th and raped her." On further questioning he stated that he entered the room, removed the cover from the girl, kissed her on her feet, her legs, and was working his way up her body. As he started to kiss her lips, he noticed she was black, so he jumped off the bed and left the room.

At the time of this interview and at two subsequent interviews with the accused that afternoon, Agent Crutcher was aware that someone had entered the room of another WAF in the same dormitory and had exposed himself to her. Although the agent said she suspected the accused of this offense as well, she never advised him of it. During the questioning, the accused admitted he was in the second girl's room and touched her, but denied removing any of his clothing.

■ As to the first statement made by the accused to Airman Balkema, the record demonstrates that the accused, on his own accord, without prompting or interrogation, made the statement concerning his lost wallet. Such a spontaneous statement, involving neither an interrogation nor request for any statement by Airman Balkema, does not permit, much less require a preliminary warning under Article 31. *United States v.*

*Workman*, 15 U.S.C.M.A. 228, 35 C.M.R. 200 (1965); *United States v. Caliendo*, 13 U.S.C. M.A. 405, 32 C.M.R. 405 (1963).

The result is the same with respect to the second statement. This statement, as admitted by the accused, was made spontaneously in an effort to explain away his prior spontaneous statement. Airman Balkema's question did not rise to the level of a request for a statement within the meaning of Article 31. *United States v. Sims*, 2 M.J. 499 (A.C.M.R.1976).

Here, both statements could have been properly admitted, and being themselves admissible, they could in no way have tainted the statements which were subsequently made to the OSI. *United States v. Dandaneau*, 5 U.S.C.M.A. 462, 18 C.M.R. 86 (1955).

■ As to whether the accused was sufficiently advised as to the nature of the charges, there is no question that he was advised as to the rape offense. The question does remain as to whether the accused was oriented to the offenses of unlawful entry into the rape victim's room and indecent acts on the same victim; and to indecent exposure and housebreaking into the room of the second individual.

In *United States v. Davis*, 8 U.S.C.M.A. 196, 24 C.M.R. 6 (1957), at page 8, the Court of Military Appeals stated:

Advice as to the nature of the charge need not be spelled out with the particularity of a legally sufficient specification; it is enough if, from what is said and done, the accused knows the general nature of the charge. *United States v. Grosso*, 7 U.S.C.M.A. 566, 23 C.M.R. 30; *United States v. Johnson*, 5 U.S.C.M.A. 795, 19 C.M.R. 91. A partial advice, considered in light of the surrounding circumstances and the manifest knowledge of the accused, can be sufficient to satisfy this requirement of Article 31, supra. *United States v. Dickenson*, supra; *United States v. O'Brien*, 3 U.S.C.M.A. 105, 11 C.M.R. 105.

In *United States v. Rice*, 11 U.S.C.M.A. 524, 29 C.M.R. 340 (1960) at page 342, the Court noted that:

The purpose of informing a suspect or accused of the nature of the accusation is to orient him to the transaction or incident in which he is allegedly involved. It is not necessary to spell out the details of his connection with the matter under inquiry with technical nicety.

The totality of information furnished the accused by the agents shows a continuous sequence of events that was sufficient to allow him to focus on the nature of the offenses of unlawful entry and indecent acts with another, which in this case were closely related to the offense of rape. Therefore, the requirement that he be advised of the nature of the offenses of unlawful entry and indecent acts was fully met. *United States v. Newvine*, 48 C.M.R. 188 (A.F.C.M.R.1974); ·*United States v. Stamats*, 45 C.M.R. 765 (N.C.M.R.1971).

■ As to the offenses of housebreaking and indecent exposure involving the second individual, Agent Crutcher was aware that the complaint was being made at the time she questioned the accused. She testified that she had no positive identification of the accused but suspected him of being involved. Being aware that another girl's room had been entered without authority and indecent acts committed therein, and suspecting the accused of being involved, she was obligated to advise him as to that incident before she questioned him in that regard. *United States v. Reynolds*, 16 U.S. C.M.A. 403, 37 C.M.R. 23 (1966). Hence, the accused's ensuing statement was obtained in violation of Article 31 and inadmissible. Its admission constituted prejudicial error to the substantial rights of the accused necessitating that the findings of guilty to indecent exposure and housebreaking into the room of the second individual be set aside.

The remaining assignments of error are either without merit, were adequately discussed in the review of the staff judge advocate and resolved adversely to the accused, or require no discussion as a result of the action taken herein.

For the reasons stated, the findings of guilty as to Specification 1, Charge I, and

the Specification of Charge II and Charge II, are set aside and in the interest of justice, dismissed.

Reassessing the sentence based on the remaining findings, we determine that so much thereof as exceeds a bad conduct discharge, confinement at hard labor for 30 months and forfeiture of all pay and allowances is inappropriate and hereby set aside.

The findings of guilty and the sentence, both as modified herein, are

AFFIRMED.

EARLY, Chief Judge, and ORSER, Judge, concur.