UNITED STATES, Appellee,

v.

Ralph L. ROGERS, Staff Sergeant,
U.S. Air Force, Appellant.

No. 96–1250.
Crim.App. No. 31645.

U.S. Court of Appeals for
the Armed Forces.

Argued May 14, 1997.

Decided Sept. 15, 1997.

Sullivan, J., filed concurring opinion.

For Appellant: *Captain Margo Stone Newton* (argued); *Lieutenant Colonel Kim L. Sheffield* and *Major Kevin P. Koehler* (on brief); *Colonel David W. Madsen.*

For Appellee: *Captain Steven D. Dubriske* (argued); *Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin,* and *Captain Mitchel Neurock* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer members of raping WH and indecently assaulting JM, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. The convening authority approved the sentence of a dishonorable discharge, 24 months' confinement, partial forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE MOTION TO SUPPRESS APPELLANT'S ORAL STATEMENT MADE TO AFOSI [AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS] SPECIAL AGENT JURANCICH REGARDING WH.

We hold that before appellant was questioned concerning the rape of WH, he was sufficiently notified of the nature of the allegation.

FACTS

At Kadena Air Base, Japan, AFOSI Special Agent (SA) Jurancich acted on leads from agents at MacDill Air Force Base, Florida, that appellant was suspected of indecently assaulting JM and raping WH. JM re-

ported to the police that at the end of an evening with appellant, he indecently attacked her in the bedroom. When appellant's sister, WH, heard about it, she told police officials that, 4 years earlier, she had been raped by appellant when she passed out from intoxication.

On May 18, 1994, SA Jurancich interviewed appellant. Having been "advised" of his Article 31, UCMJ, 10 USC § 831, rights, including that he was suspected of "sexual assault," appellant waived them and consented to an interview. He was originally interviewed for about 1½ hours, and then he agreed to make a written statement.

After the written statement was completed, SA Jurancich informed appellant that he had other items to discuss with him. Appellant "acknowledged [to SA Jurancich] the fact that we needed to talk about other stuff and that he didn't have a problem with that." SA Jurancich then questioned appellant about an incident which occurred in Turkey and which was never charged. After this, SA Jurancich then said to appellant: "Well, we've got this other thing here, and it's kind of a sensitive one, and I need to ask you about it. I need you to tell me what happened with your sister." The military judge asked SA Jurancich whether appellant sought clarification of what SA Jurancich meant by this. SA Jurancich told the military judge what happened next:

I replied that, "Some incident happened between you and your sister that we need to talk about." There may have been a small interchange there, but it wasn't like it took me 10 minutes to clarify for him what I was trying to get at. He—I don't want to say he was jumping at the chance

to speak about it; however, he didn't withdraw from talking about it. He acknowledged that something had gone on, although he was not specific on what had transpired.

Immediately after SA Jurancich brought up this subject but before any further discussion of the matter, appellant was given a short break. Following the break, he was reminded of his rights. SA Jurancich said, "We'd like to continue talking." Appellant agreed to continue the interview and then made his oral admission which is the basis for this appeal. The judge found that "[t]he term 'sexual assault' is sufficiently broad as to include rape and attempted rape." He further found that, after being properly advised, appellant twice waived his rights, with the second warning taking place right before the break. Upon returning from the break, SA Jurancich reminded him "and he acknowledged" that he was still under advisement, "but he was not re-advised of his rights."

## DISCUSSION

■ Rights' warnings are required in both the civilian and military communities. In the civilian community, warnings are required under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1] In the military community, warnings are required under Article 31(b). *See also* Mil.R.Evid. 305(b) and (c), Manual for Courts–Martial, United States (1995 ed.). There are differences in these rights' warnings as indicated in the chart below:

Denial of the right to consult counsel during interrogation has also been proscribed by military tribunals. There appears to have been no marked detrimental effect on criminal law enforcement in these jurisdictions as a result of these rules.
384 U.S. 436, 489, 86 S.Ct. 1602, 1635–36, 16 L.Ed.2d 694 (footnotes omitted). *Miranda* was applied to the military in *United States v. Tempia*, 16 USCMA 629, 37 CMR 249 (1967).

---

1. Relying in part on the rights'-warning practice in the military, the Court in *Miranda* said that rights' warnings would not be onerous in the civilian law enforcement community. Chief Justice Warren stated:

[I]n our country the Uniform Code of Military Justice has long provided that no suspect may be interrogated without first being warned of his right not to make a statement and that any statement he makes may be used against him.

| | Art. 31(b) | Miranda |
|---|---|---|
| Who Must Warn | Person Subject to Code | Law Enforcement Officer |
| Who Must be Warned | Accused or Suspect | Person Subject to Custodial Interrogation |
| When Warning Required | Questioning or Interrogating | Custodial Interrogation |
| Content of Warning | 1. Nature of Offense<br>2. Right to Silence<br>3. Consequences | 2. Right to Silence<br>3. Consequences<br>4. Right to Counsel |

*Miranda* does not require rights' warnings as to the nature of the offense. *See, e.g., State v. Owen,* 13 Wash.App. 146, 534 P.2d 123, 125 (1975). However, without indicating the degree of specificity, Article 31(b)[2] provides that the warning put the "accused or suspect[ ]" on notice "of the nature of the accusation." In *United States v. Rice,* 11 USCMA 524, 29 CMR 340 (1960), this Court held that advice the investigator was concerned with "an overpayment" was sufficient to make two accuseds aware they were being questioned about a larceny. Chief Judge Quinn stated:

> The purpose of informing a suspect or accused of the nature of the accusation is to orient him to the transaction or incident in which he is allegedly involved. It is not necessary to spell out the details of his connection with the matter under inquiry with technical nicety.

*Id.* at 526, 29 CMR at 342, citing *United States v. Davis,* 8 USCMA 196, 24 CMR 6 (1957).[3]

Likewise, in *United States v. Nitschke,* 12 USCMA 489, 31 CMR 75 (1961), this Court held that advising the suspect that the agent was investigating a traffic accident was sufficient to warn him of a fatality, *i.e.,* negligent homicide, involved with the accident. The Court emphasized that the suspect was neither deceived by a "canny investigator" nor lied to. *Id.* at 492, 31 CMR at 78. The key to the inquiry as to sufficiency of the notice requires considering the precise wording of the warning in the context "of the surrounding circumstances and the manifest knowledge of the accused...." *Davis, supra* at 198, 24 CMR at 8, citing *United States v. Dickenson,* 6 USCMA 438, 20 CMR 154 (1955), and *United States v. O'Brien,* 3 USCMA 105, 11 CMR 105 (1953).

In *O'Brien, id.* at 109, 11 CMR at 109, the Court held that O'Brien was sufficiently aware of the purpose of the investigation, even though he was not told he was suspected of killing his wife. The crux of the warning "lies in its requirement of a warning that the suspect is obliged to make no state-

---

2. Article 31(b), Uniform Code of Military Justice, 10 USC § 831(b), provides:

> No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

*See also* Mil.R.Evid. 305(c), Manual for Courts–Martial, United States (1995 ed.); *United States v. Kline,* 35 MJ 329, 335–36 (CMA 1992).

3. *See also United States v. Napoleon,* 46 MJ 279, 285 (1997)(Sullivan, J., concurring in part and in the result)(Article 31 "requires only that an accused or a suspect be advised of 'the nature of the accusation,' and here, appellant was told that she was suspected of 'stabbing' the victim. These warnings were adequate."); *United States v. Davis,* 8 USCMA 196, 24 CMR 6 (1957) (sufficient if accused knows the general nature of the charge); *United States v. Grosso,* 7 USCMA 566, 23 CMR 30 (1957)(warning of questioning about knowledge and association with superior officer sufficient for investigation about criminally libelous letter to officer).

ment—not in its direction that he be informed of the nature of the offense under investigation." *Id.*

After appellant confessed to the JM incident, the interrogator asked about "what happened with your sister." Before further questioning, they took a break. When they returned, SA Jurancich reminded appellant of his rights, and appellant acknowledged that he still understood them. Under these circumstances, further rights' advisement was unnecessary. *See United States v. Jefferson,* 44 MJ 312, 314 (1996). Appellant had already been warned of the nature of the accusation, that is, sexual assault concerning his sister, prior to the break and before further questioning. During the ensuing interview, he made admissions concerning the complaint of his sister.

We hold that, under these circumstances, appellant was adequately advised of the nature of the accusation, of the right to remain silent, and that any statement could be used against him.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges GIERKE and EFFRON concur.

SULLIVAN, Judge (concurring):

In my separate opinion in *United States v. Napoleon,* 46 MJ 279, 285 (1997), my view of circumstances very similar to those in the instant case was as follows:

I would hold that there was no Article 31, Uniform Code of Military Justice, 10 USC § 831, violation in this case. That article requires only that an accused or a suspect be advised of "the nature of the accusation," and here, appellant was told that she was suspected of "stabbing" the victim. These warnings were adequate. *See United States v. Rice,* 11 USCMA 524, 526, 29 CMR 340, 342 (1960); *United States v. Davis,* 8 USCMA 196, 198 24 CMR 6, 8 (1957).

In the case before us, the majority holds the same. I see no reason not to follow my separate path of *Napoleon,* especially where it merges with the path that the other judges travel today. I thus vote to affirm appellant's convictions of rape and indecent assault.