UNITED STATES, Appellee

v.

Thomas S. PIPKIN, Senior Airman
U.S. Air Force, Appellant

No. 02-0837

Crim. App. No. 34585

_____

United States Court of Appeals for the Armed Forces

Argued April 2, 2003

Decided June 26, 2003

BAKER, J., delivered the opinion of the Court, in which CRAWFORD,
C.J., GIERKE, EFFRON, and ERDMANN, JJ., joined.


Counsel


For Appellant:  Captain Jennifer K. Martwick (argued); Colonel
   Beverly B. Knott and Major Terry L. McElyea (on brief).

For Appellee:  Major John D. Douglas (argued); Colonel LeEllen
   Coacher, Lieutenant Colonel Lance B. Sigmon, and Captain C.
   Taylor Smith (on brief).

Amicus Curiae:  Larry D. White (law student)(argued); John C.
   Kunich, Esq. (supervising attorney) and Jon W. Shelburne, Esq.
   (supervising attorney) - For the Roger Williams University,
   Ralph R. Papitto School of Law, Armed Forces Law Student
   Association.


Military Judge:  James L. Flanary


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION

United States v. Pipkin, No. 02-0837/AF

Judge BAKER delivered the opinion of the Court.

Pursuant to mixed pleas, Appellant was convicted by a general court-martial, composed of officer and enlisted members, of conspiracy to distribute ecstasy, wrongful use of ecstasy and wrongful use of marijuana, in violation of Articles 81, and 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 881, 912a (2000), respectively. The adjudged and approved sentence included a bad-conduct discharge, confinement for 18 months and reduction in grade to E-1. The Air Force Court of Criminal Appeals affirmed in an unpublished opinion. United States v. Pipkin, No. ACM 34585, slip op. (A.F. Ct. Crim. App. June 6, 2002)(per curiam). We granted review on the following issue:[1]

> WHETHER THE MILITARY JUDGE ERRED BY NOT GRANTING
> DEFENSE COUNSEL'S MOTION TO SUPPRESS APPELLANT'S
> WRITTEN AND ORAL STATEMENTS TO OSI WHEN OSI DID NOT
> TELL THE APPELLANT HE WAS UNDER INVESTIGATION FOR
> CONSIPIRACY.

For the reasons that follow, we hold that the military judge did not err.

FACTS

On July 31, 2000, Air Force Office of Special Investigations (OSI) special agents (SAs) Hartwell and Ji interviewed Airman First Class (A1C) Skinner about

---

[1] Argument was heard in this case at the Roger Williams University, Ralph R. Papitto School of Law, Bristol, Rhode Island, as part of this Court's Project Outreach. See United States v. Allen, 34 M.J. 228, 229 n.1 (C.M.A. 1992).

2

suspected drug use and distribution. During the interview, A1C Skinner indicated that he had received money to purchase his "working stock" of ecstasy from someone named "Shane." He also said that "Shane" was his former roommate.

On August 7, 2000, SAs Hartwell and Ji interviewed A1C Ponder who told them that he had seen A1C Skinner's stock of approximately 300 ecstasy pills and that A1C Skinner told him that "Shane" had provided half of the money to purchase it. Through information obtained from an informant, the SAs learned that Appellant, Senior Airman (SrA) Thomas Shane Pipkin, was the individual referred to as "Shane" by A1C Skinner and A1C Ponder. As a result, on August 14, 2000, the SAs brought Appellant and his current roommate, SrA Georgianna in for interviews. While SAs Hartwell and Ji interviewed Georgianna in one room, SAs Ferrell and Dejong interviewed Appellant in another.

Before SA Ferrell and SA Dejong began the interview, they read Appellant his rights under Article 31, UCMJ, 10 U.S.C. § 831 (2000), and, according to testimony from SA Ferrell, informed him orally that he was being investigated for "use, possession and distribution of controlled substances," violations of Article 112a. SA Ferrell also testified that he explained to Appellant that "controlled substances means illegal drugs, and [Appellant] acknowledged that he understood that." Appellant subsequently declined counsel, and agreed to answer

questions.  The SAs did not inform Appellant that they suspected
him of conspiracy to distribute a controlled substance under
Article 81.  According to SA Ferrell, the first thing Appellant
was asked was whether he knew why he had been brought in for an
interview.  SA Ferrell testified that "[Appellant] said, yes,
that it had to do with his former roommate, Jeff Skinner, and
that it must be about drugs."  Appellant was then asked whether
he had provided money to A1C Skinner for drugs and if he ever
used ecstasy or other illegal drugs.  Appellant denied using
illegal drugs and said he loaned A1C Skinner approximately $600
to help him pay some bills.  Appellant then agreed to make a
written statement.  At this point, Appellant was provided an Air
Force Form 1168,[2] which in block III indicates that Appellant was
advised that he was suspected of "a violation of Article 112a,
UCMJ, 10 U.S.C. § 934 (2000) wrongful use and possession of a
controlled substance."  Although citing to Article 112a, the
form does not cite to Article 81, nor indicate that Appellant
was suspected of distribution of a controlled substance, or
conspiracy to distribute drugs.

While Appellant was writing his statement, the SAs took a
break to confer with SAs Hartwell and Ji, who were interviewing
SrA Georgianna.  SrA Georgianna had told the SAs that Appellant
once told him that he had given approximately $2,000 to A1C

---

[2] This form is entitled, "STATEMENT OF SUSPECT/WITNESS/COMPLAINANT."

Skinner for the purpose of buying ecstasy.  According to SrA Georgianna, Appellant told him the ecstasy would be sold and a profit would be returned to Appellant.  The SAs then returned to the interview room and confronted Appellant with the information obtained from SrA Georgianna.  Once confronted, Appellant confirmed SrA Georgianna's version of events and admitted that he knew that A1C Skinner was going to buy ecstasy with the money he loaned him.  He also admitted that he anticipated he would get his money back with an undisclosed profit.  However, Appellant said he had given A1C Skinner only $1,500 and not $2,000.  Appellant eventually executed a written statement to this effect.

Appellant was subsequently charged with use of marijuana, use of ecstasy and conspiracy to distribute ecstasy.  At trial, defense counsel moved to suppress Appellant's oral and written statements regarding the conspiracy.  Counsel argued that the SAs had provided Appellant with a defective Article 31 rights advisement when they failed to inform him that, in addition to being suspected of Article 112a, he was also suspected of violating Article 81.  The military judge denied the motion and found, inter alia, that Appellant was fully oriented to the nature of the allegations against him.  He also found that Appellant knew of A1C Skinner's prior interview and "volunteered that he was there partially . . . as a result of his

acquaintance with Airman First Class Skinner, and had verbally

been told that he was suspected of distributing drugs."

Thereafter, the statement was admitted on the charge of

conspiracy.

### DISCUSSION

We review the denial of a motion to suppress a confession

for an abuse of discretion, and we leave a military judge's

findings of fact undisturbed unless they are clearly erroneous.

United States v. Simpson, 54 M.J. 281, 283 (C.A.A.F. 2000).

> Article 31(b) provides:
>
> No person subject to this chapter may interrogate, or
> request any statement from an accused or a person
> suspected of an offense without first informing him of
> the nature of the accusation and advising him that he
> does not have to make any statement regarding the
> offense of which he is accused or suspected and that
> any statement made by him may be used as evidence
> against him in a trial by court-martial.

(Emphasis added.)  This is not the first time that this Court has

examined the statutory language of this provision.  In United

States v. Rice, 11 C.M.A. 524, 526, 29 C.M.R. 340, 342 (1960),

we concluded that "[i]t is not necessary to spell out the

details of his connection with the matter under inquiry with

technical nicety."  Moreover,

> [a]dvice as to the nature of the charge need not be
> spelled out with the particularity of a legally
> sufficient specification;  it is enough if, from what
> is said and done, the accused knows the general nature
> of the charge.  A partial advice, considered in light
> of the surrounding circumstances and the manifest

6

> knowledge of the accused, can be sufficient to satisfy
> this requirement of Article 31[.]

United States v. Davis, 8 C.M.A. 196, 198, 24 C.M.R. 8, 10

(1957)(citations omitted).  In our most recent case on the issue

we went further and concluded that:

> [i]t is not necessary that an accused or suspect be
> advised of each and every possible charge under
> investigation, nor that the advice include the most
> serious or any lesser-included charges being
> investigated.  Nevertheless, the accused or suspect
> must be informed of the general nature of the
> allegation, to include the area of suspicion that
> focuses the person toward the circumstances
> surrounding the event.

Simpson, 54 M.J. at 284.

In Simpson, OSI agents learned of allegations against the

appellant that he had sexually abused his 9-year-old neighbor.

The agents obtained search warrants that described the offenses

under investigation as failure to obey an order, assault,

indecent acts or liberties with a child, sodomy and rape.

Simpson was interviewed, and during his Article 31(b) rights

advisement, he was told that the matter for which he was being

investigated was indecent acts or liberties with a child.

Having lost the motion to suppress his confession at trial,

Simpson contended on appeal that the agent's failure to advise

him of the known offenses in addition to indecent acts with a

child rendered the rights advisement deficient.  This Court

alluded to possible factors that might be considered in

determining whether the nature-of-the-accusation requirement was satisfied. They included: whether the conduct is part of a continuous sequence of events; whether the conduct was within the frame of reference supplied by the warnings; or whether the interrogator had previous knowledge of the unwarned offenses. Id. The factors cited are not exhaustive, but are "among the possible factors" to be considered. "[N]ecessarily, in questions of this type, each case must turn on its own facts." United States v. Nitschke, 12 C.M.A. 489, 492, 31 C.M.R. 75, 78 (1961). Other factors might also bear on the application of Article 31(b), including, as in this case, the complexity of the offense at issue.

In this case, the military judge found that Appellant knew he was being interrogated, in part, because of his relationship to A1C Skinner. He also found that initially, Appellant characterized the money he gave A1C Skinner as a loan for debts and only later admitted that it was for the purchase of drugs. This particular finding suggests that Appellant was aware that the interview was going to focus on the financial aspect of his relationship with A1C Skinner. Finally, the military judge found that Appellant had been verbally informed that he was suspected of drug distribution. Therefore, the area of suspicion on which Appellant was focused at the time of the warnings, and before any admissions, was A1C Skinner's suspected

drug distribution and his own suspected complicity in the distribution. At the outset of the interview, the SAs were not required to identify each possible theory of accomplice liability a prosecutor might later pursue. "The precision and expertise of an attorney in informing an accused of the nature of the accusation under Article 31 is not required." Simpson, 54 M.J. at 284.

That being said, we pause for a moment to consider the discrepancy between SA Ferrell's testimony that Appellant was orally warned that he was suspected of use, possession, and distribution of controlled substances, and the Air Force Form 1168, which indicates only that the Appellant was informed that he was suspected of use and possession of a controlled substance. Clearly, a warning on distribution will better orient a suspect to a suspicion of conspiracy to distribute than a warning on use and possession alone. The Government has the burden of establishing compliance with rights warning requirements by a preponderance of the evidence. Id. at 283. The military judge concluded that the Government had met its burden in this case. The discrepancy between the oral warning and rights advisement form is not enough to find the military judge's findings clearly erroneous. Appellant's response to investigators, that the interview had to do with his former roommate (and conspirator) and drugs, makes it clear that he was

9

oriented to the nature of the accusation.  Thus, we hold that the charged conspiracy was within the frame of reference supplied by the warnings for the purposes of Article 31.

CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.