*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

––––––––––––––

### UNITED STATES
Appellee

**v.**

### Asa M. EVANS, First Lieutenant
United States Army, Appellant

### No. 16-0019
Crim. App. No. 20130647

Argued May 10, 2016—Decided June 6, 2016

Military Judge: Douglas K. Watkins

For Appellant: *Captain Matthew D. Bernstein* (argued); *Lieutenant Colonel Jonathan F. Potter* and *Captain Heather L. Tregle* (on brief); *Major Christopher D. Coleman* and *Captain Ryan T. Yoder*.

For Appellee: *Captain Linda Chavez* (argued); *Colonel Mark H. Sydenham*, *Lieutenant Colonel A. G. Courie III*, and *Major Steven J. Collins* (on brief); *Captain Carling M. Dunham*.

Judge OHLSON delivered the opinion of the Court, in which Chief Judge ERDMANN, and Judges STUCKY, RYAN, and SPARKS, joined.

––––––––––––––

Judge OHLSON delivered the opinion of the Court.

A panel of members sitting as a general court-martial convicted Appellant, contrary to his pleas, of two specifications of making false official statements and one specification of larceny in violation of Articles 107 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 921 (2012). On appeal to the United States Army Court of Criminal Appeals (CCA), Appellant challenged his conviction by arguing that the military judge erred when he denied his motion to suppress evidence. In support of his argument, Appellant cited the fact that the Government obtained incriminating statements from him without first advising him of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2012).

In its opinion, the CCA agreed with the substance of Appellant's argument. However, after conducting a review of the Article 31(b), UCMJ, violation for prejudice, the CCA dismissed only one of the two false official statement specifications and affirmed the remaining charges. We granted review to determine whether the CCA conducted its prejudice analysis under the correct standard. The answer, we conclude, is yes.

The protections afforded to servicemembers under Article 31(b), UCMJ, are in many respects broader than the rights afforded to those servicemembers under the Fifth Amendment of the Constitution. *See generally United States v. Swift*, 53 M.J. 439, 445 (C.A.A.F. 2000) ("Congress … provided members of the armed forces with a rights[] warning requirement that is broader than the warnings required in a civilian setting as a matter of constitutional law …."); *United States v. Rogers*, 47 M.J. 135, 136–37 (C.A.A.F. 1997) (noting the same). Accordingly, when an Article 31(b), UCMJ, violation occurs in a particular case, the appropriate test for prejudice depends upon the facts and circumstances presented. If the Article 31(b), UCMJ, violation also implicates the constitutional rights of the accused, then the harmless beyond a reasonable doubt test applies. But if the Article 31(b), UCMJ, violation stands alone as a statutory violation (that is, if the violation does not also present a constitutional violation) then the nonconstitutional test for prejudice—spelled out in *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)—applies.

In the instant case, although there was a violation of Appellant's rights under Article 31(b), UCMJ, that violation did not also constitute a violation of Appellant's Fifth Amendment rights. We therefore conclude that the CCA correctly used the nonconstitutional test for prejudice and, as a result, affirm the holding below.

## I. Background

During the relevant time frame, Appellant served as a first lieutenant in the United States Army. After questions arose about whether Appellant was authorized to wear the

Special Forces Combat Patch,[1] Appellant's battalion commander initiated an investigation under AR 15-6. Dep't of the Army, Reg. 15-6, Boards, Commissions, and Committees, Procedures for Administrative Investigations and Boards of Officers (Apr. 1, 2016). During the investigation, Appellant declined to talk with the investigating officer and requested representation from an attorney. The AR 15-6 investigating officer ultimately concluded that Appellant had not deployed to Afghanistan and had worn an unauthorized combat patch.

When Appellant learned of the investigation's findings, he sought to verify his putative Afghanistan deployment by submitting a dental x-ray that was purportedly from a dental clinic located at Bagram Air Field, Afghanistan. Instead of allaying suspicions, however, the x-ray raised further questions about Appellant's truthfulness.

The Brigade Judge Advocate and Appellant's attorney conferred about the AR 15-6 report and whether Appellant was submitting the x-ray as rebuttal evidence to the report. Appellant's attorney informed the Brigade Judge Advocate that Appellant would execute a statement about the x-ray and deliver it to the brigade. The Brigade Judge Advocate then instructed Appellant's direct supervisor, Major (MAJ) JH, to verify that Appellant was submitting the x-ray in rebuttal to the AR 15-6 report. MAJ JH was aware that Appellant was being investigated for "false honors." At some point, MAJ JH received an unsigned Memorandum for Record indicating that Appellant had dental work done at Bagram Air

---

[1] Army Regulation (AR) 670-1 provides that the "[a]uthorization to wear a [shoulder sleeve insignia] indicating [former wartime service] applies only to Soldiers who are/were assigned to U.S. Army units that meet" a certain set of criteria, to include "active[] participat[ion] in or support[] [to] ground combat operations against hostile forces in which [the unit] [was] exposed to the threat of enemy action or fire, either directly or indirectly." Dep't of the Army, Reg. 670-1, Uniform and Insignia, Wear and Appearance of Army Uniforms and Insignia para. 21-17(*a*)(1)(*b*) (Apr. 10, 2015). Notably, Appellant was never charged under Article 134, UCMJ, 10 U.S.C. § 934, for this conduct.

Field, Afghanistan, and the x-ray itself purportedly identified the location and date of the dental work.[2]

While Appellant was in the field for a network integration event, MAJ JH took Appellant into a conference room to ask him about the x-ray and to present Appellant with the Memorandum for Record.[3] He asked Appellant if the x-ray was submitted in rebuttal to the AR 15-6 report and if the Memorandum for Record explained Appellant's intent. Appellant responded affirmatively to both questions. MAJ JH then asked Appellant to sign the Memorandum for Record if he agreed with its contents, and Appellant signed the document. At no point during this meeting did MAJ JH advise Appellant of his rights under Article 31(b), UCMJ, or *Miranda v. Arizona*, 384 U.S. 436 (1966).

Ultimately, these events—the submission of the x-ray and the endorsement of the Memorandum for Record—led the Army to charge Appellant with two specifications of making false official statements. At trial, Appellant moved to suppress the statements he made during his meeting with MAJ JH on the basis that he had not been advised of his Article 31(b), UCMJ, rights. The military judge denied the motion after concluding that MAJ JH was neither acting in a disciplinary/law enforcement capacity nor being used as a pretext to evade the constraints of Article 31(b), UCMJ.

Contrary to his pleas, Appellant was convicted of two specifications of making false official statements and one specification of larceny in violation of Articles 107 and 121, UCMJ. The convening authority approved Appellant's ad-

---

[2] The origins of the Memorandum for Record are unclear. The military judge determined that it was "a logical presumption that the memorandum came from [Appellant's attorney] and was delivered to someone in [the Brigade Judge Advocate's] office in the field, and then received in a packet by MAJ [JH]." Following oral argument in this case, Appellant filed a motion on May 13, 2016, seeking to clarify certain statements regarding the Memorandum for Record. That motion is granted. In the end, however, the ambiguous origin of the Memorandum for Record is not a factual matter that is dispositive in this particular case.

[3] MAJ JH testified that he brought Appellant to the conference room because "it was a quiet place where [they] could talk."

judged sentence of a dismissal, confinement for one month, and forfeiture of all pay and allowances.

On appeal, the CCA found that the military judge erroneously failed to suppress evidence that had been collected in violation of Article 31(b), UCMJ.[4] The CCA ultimately dismissed one false official statement specification because the Memorandum for Record was the "primary evidence admitted by the government to prove" this specification. *United States v. Evans*, No. ARMY 20130647, 2015 CCA LEXIS 300, at \*14, 2015 WL 4400121, at \*4 (A. Ct. Crim. App. July 17, 2015) (unpublished). However, after applying the factors from *Kerr*, the CCA further concluded that any error was harmless with respect to the larceny specification and the other false official statement specification, which related to the submitted x-ray. The CCA therefore affirmed the findings for these two offenses, and it also affirmed the approved sentence following a sentence reassessment. *Evans*, 2015 CCA LEXIS 300, at \*13–16, 2015 WL 4400121, at \*4–5.

We granted review on the following issue:

> Where the Army Court of Criminal Appeals found evidence was admitted in violation of Appellant's Article 31(b), UCMJ, rights, did the court err in applying the *Kerr* prejudice test as opposed to the *Brisbane* harmless beyond a reasonable doubt test?

*United States v. Evans*, 75 M.J. 204 (C.A.A.F. 2016) (order granting review). This is a question of law, which we review de novo. *United States v. Springer,* 58 M.J. 164, 167 (C.A.A.F. 2003); *see also United States v. Paul*, 73 M.J. 274, 277 (C.A.A.F. 2014); *cf.* 3 Steven Alan Childress & Martha S. Davis, Federal Standards of Review § 15.02, at 15-14 n.74 (4th ed. 2010) (noting that de novo review applies to "the legal question of which standard of review to apply").

---

[4] Because the Government did not certify whether the CCA correctly found an Article 31(b), UCMJ, violation, this conclusion remains the law of the case. *See United States v. Ward*, 74 M.J. 225, 227 n.3 (C.A.A.F. 2015).

## II. Analysis

Article 31(b), UCMJ, is a statutory precursor to *Miranda* warnings[5] that implements the Article 31(a), UCMJ, privilege against compulsory self-incrimination. *See generally Swift*, 53 M.J. at 444–45. Specifically, Article 31(b), UCMJ, states:

> No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

This "warning requirement provides members of the armed forces with *statutory* assurance that the standard military requirement for a full and complete response to a superior's inquiry does not apply in a situation when the privilege against self-incrimination may be invoked." *Swift*, 53 M.J. at 445 (emphasis added).

The mere fact that Article 31(b), UCMJ, rights have a constitutional analog does not change the means by which those rights are ultimately conferred—that is, by statute— nor does it otherwise convert those statutory rights into constitutional rights. Indeed, we have explicitly recognized that Article 31(b), UCMJ, derives primarily from "*statutory enactment,* not constitutional adjudication." *Swift*, 53 M.J. at 445 (emphasis added). We further have held that Article 31(b), UCMJ, rights are in certain respects more extensive than those provided under the Fifth Amendment. *See gener-*

---

[5] *Miranda* gave rise to a judicially created, prophylactic rule of constitutional law requiring that an "accused must be adequately and effectively apprised of his rights." *Miranda*, 384 U.S. at 467. The Fifth Amendment rights captured by *Miranda* apply to the military, *United States v. Tempia*, 16 C.M.A. 629, 631, 37 C.M.R. 249, 251 (1967), and are distinct from those provided by Article 31(b), UCMJ, *Rogers*, 47 M.J. at 136–37. Notably, *Miranda* was decided by the Supreme Court in 1966, but the statutory warning requirements for servicemembers first appeared "in the aftermath of World War II." *Swift*, 53 M.J. at 445.

*ally Swift*, 53 M.J. at 445; *Rogers*, 47 M.J. at 136–37. Therefore, when it comes to such rights, "the Constitution prescribes [a] floor … [not] a ceiling." *Cf., e.g.*, *United States v. Seljan*, 547 F.3d 993, 1013–14 (9th Cir. 2008).

In light of these circumstances, violations of Article 31(b), UCMJ, must be viewed as falling into one of two distinct categories: either (a) purely statutory violations; or (b) statutory violations that also present a constitutional violation. This dichotomy then leads us to the following determination about the appropriate prejudice test that must be applied in each instance: (a) purely statutory violations must be tested for prejudice under the factors provided in *Kerr*; and (b) statutory violations that also present a constitutional violation must be tested for prejudice under the "harmless beyond a reasonable doubt" standard, as was done in *United States v. Brisbane*, 63 M.J. 106, 116 (C.A.A.F. 2006).

We concede that over the past few decades our opinions addressing violations of Article 31(b), UCMJ, have not always clearly drawn, or faithfully observed, this distinction.[6] However, we draw this bright line rule today. Accordingly, any precedent to the contrary is hereby abrogated.

Viewed through the prism provided above, it is clear that the CCA was correct to apply the nonconstitutional (i.e., *Kerr*) test for prejudice. Two points lead us to this conclusion.

First, Appellant was not subjected to a custodial interrogation and therefore suffered no violation of his Fifth Amendment rights under *Miranda*. Whether a set of facts gives rise to a "custodial interrogation" under *Miranda* depends upon whether a suspect "reasonably believed that his 'freedom of action [was] curtailed to a 'degree associated with formal arrest.'" *United States v. Schake*, 30 M.J. 314,

---

[6] Importantly, we are aware of no instances where this Court has applied the nonconstitutional test for prejudice to an Article 31(b), UCMJ, violation that implicated constitutional rights. However, it is apparent that we have applied the constitutional test (i.e., the "harmless beyond a reasonable doubt" test) to purely statutory violations under Article 31(b), UCMJ. *See, e.g., United States v. Guyton-Bhatt*, 56 M.J. 484, 487 (C.A.A.F. 2002); *United States v. Pittman*, 36 M.J. 404, 408 (C.M.A. 1993).

318 (C.M.A. 1990) (alteration in original) (emphasis omitted) (citations omitted). In making this determination, courts consider: "(1) whether the person appeared for questioning voluntarily; (2) the location and atmosphere of the place in which questioning occurred[;] and (3) the length of the questioning." *United States v. Chatfield*, 67 M.J. 432, 438 (C.A.A.F. 2009).

The record before us demonstrates that Appellant's participation in the questioning was voluntary. To begin, the facts indicate there was some coordination between Appellant's counsel and the Brigade Judge Advocate regarding having Appellant submit a statement about the disputed dental x-ray. Furthermore, when MAJ JH initiated his encounter with Appellant, MAJ JH asked him to step into a conference room simply because "it was a quiet place where [they] could talk." Once there, it appears that MAJ JH only did two things: he asked Appellant whether the x-ray was submitted in rebuttal to his AR 15-6 investigation, and upon receiving an affirmative response, he requested that Appellant sign a Memorandum for Record to that effect. Although there is little indication as to how long this exchange took, there is no basis upon which to conclude that Appellant "reasonably believed that his 'freedom of action [was] curtailed to a 'degree associated with formal arrest.'" *Schake*, 30 M.J. at 318 (alteration in original) (emphasis omitted) (citations omitted); *see, e.g., United States v. Catrett*, 55 M.J. 400, 404 (C.A.A.F. 2001) (finding interrogation custodial where accused was told "he was not free to leave" and "was under constant police supervision") (internal quotation marks omitted). As a result, the Article 31(b), UCMJ, violation did not also implicate Appellant's Fifth Amendment rights under *Miranda*.

Second, the failure to provide an Article 31(b), UCMJ, warning under the attendant circumstances was not itself so egregious that it prompted any other violation of the Fifth Amendment. There inarguably exist subtle pressures in military society that are not present in the civilian world, *see generally United States v. Armstrong*, 9 M.J. 374, 378 (C.M.A. 1980), and these pressures—in concert with other, case-specific circumstances—may cause a servicemember who is not in a custodial setting to nonetheless involuntarily

inculpate himself. If the totality of the circumstances indicate that a servicemember's will was overborne, and his or her inculpatory statements were not a product of self-determination, there may well exist a constitutional violation under the Fifth Amendment. *See Beckwith v. United States*, 425 U.S. 341, 347–48 (1976); *cf., e.g., United States v. Ellis*, 57 M.J. 375, 378–79 (C.A.A.F. 2002). However, we are not faced with such a case here.

Ultimately, then, the facts of this case reflect a statutory violation of Article 31(b), UCMJ, and not a constitutional violation under the Fifth Amendment. Accordingly, we hold that the CCA correctly applied the nonconstitutional test for prejudice.

### III. Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.