*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellant

**v.**

## Brandon K. FLANNER, Staff Sergeant
United States Marine Corps, Appellee

**No. 24-0093**
Crim. App. No. 202300134

Argued May 7, 2024—Decided September 30, 2024

Military Judges: Yong J. Lee (arraignment and motions)
and Andrea C. Goode (motions)

For Appellant: *Colonel Joseph M. Jennings*, USMC (argued); *Major Tyler W. Blair*, USMC, *Major Mary Claire Finnen*, USMC (on brief); *Brian K. Keller*, Esq.

For Appellee: *Lieutenant Commander Leah M. Fontenot*, JAGC, USN (argued).

Judge JOHNSON delivered the opinion of the Court, in which Judge MAGGS and Judge HARDY joined. Chief Judge OHLSON filed a separate dissenting opinion. Judge SPARKS filed a separate dissenting opinion.

————————

Judge JOHNSON delivered the opinion of the Court.

This case raises the issue of whether Appellee had a right to appointed military defense counsel during a non-custodial law enforcement interview with the Naval Criminal Investigative Services (NCIS) he initiated before charges were preferred, after having invoked his right to have counsel present during a prior interview. The defense filed a pretrial motion to suppress Appellee's statement to NCIS. The military judge granted the motion, and the Government appealed pursuant to Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862 (2018). The United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) affirmed the military judge's ruling and denied the Government's motions for panel and en banc reconsideration. The Judge Advocate General of the Navy certified the following question to this Court:

> Did the military judge abuse her discretion when she suppressed Appellee's non-custodial, pre-preferral, self-scheduled interview with law enforcement in which Appellee waived the rights to counsel and to remain silent?

For the reasons stated below, we answer the certified question in the affirmative and reverse the decision of the NMCCA.

## I. Background

Appellee, Staff Sergeant Flanner, is charged with one specification of larceny in violation of Article 121, UCMJ, 10 U.S.C. § 921 (2018), and one specification each of making a false claim and using a forged signature in violation of Article 124, UCMJ, 10 U.S.C. § 924 (2018). The NMCCA described the circumstances of the charged offenses as follows:

> In February 2020, Appellee was one of two contracting officers located in Kuwait who managed all of the contracts for the United States Marine Corps [USMC] operating in that region. Between 14 February and 25 February 2020 Appellee submitted four purchase vouchers, two on 18 February 2020 and two on 23 February

> 2020. On 16 May 2020 it was discovered these four purchase vouchers, representing more than $30,000 in government funds, were allegedly fraudulent. Appellee's charges stem from this alleged theft of over $30,000 through the processing of fraudulent purchase voucher claims in Bahrain.

*United States v. Flanner*, No. NMCCA 202300134, 2023 CCA LEXIS 428, at \*2, 2023 WL 6564919, at \*1 (N-M. Ct. Crim. App. Oct. 10, 2023) (unpublished) (alteration in original) (footnote omitted).

On May 6, 2021, NCIS Special Agent (SA) SC attempted to interview Appellee. SA SC informed Appellee that he was suspected of fraud, false official statements or false swearing, and forgery in violation of the UCMJ. After being advised of his rights, Appellee invoked his right to counsel, writing on a rights waiver form, "I would like to have a lawyer present during questioning." As a result, SA SC terminated the interview.

Appellee went to the Defense Services Office (DSO) on two occasions seeking legal services related to his interview. According to his trial defense counsel, in May of 2021, Appellee spoke with an attorney, and he returned to the DSO in June of 2021 to speak with an attorney, but he was not appointed military counsel. In September of 2021, Appellee asked his staff noncommissioned officer-in-charge (SNOIC) if he would receive military counsel for an interview with NCIS. After conferring with the unit's staff judge advocate (SJA), the SNOIC advised Appellee that counsel would be appointed to represent him only if charges were preferred. The SNOIC relayed this advice to Appellee despite the SJA's admonition that the information was solely for the SNOIC's awareness and his express direction to not share the information with Appellee as the SJA could not act as Appellee's counsel.

Based upon the SNOIC's advice, Appellee—whose family had moved away while he was on legal hold past his term of commitment awaiting resolution of this matter—decided to schedule an interview with NCIS. He explained:

> After learning that I could only be appointed coun-
> sel if charges were preferred, I reached out to
> NCIS on 8 September 2021 to schedule an inter-
> view. I reached out to NCIS because I believed
> that I could not do an interview with military
> counsel present. I only thought that I could do an
> interview with an attorney present if I hired a ci-
> vilian attorney.

SA SC documented Appellee's request for an interview in a note that stated in pertinent part, "Wants to come in for an interview[.] Was given incorrect info on lawyer by cmd[.] Explained preferral of charges = lawyer[.] No civ lawyer[.]"

At the second interview in September of 2021, Appellee spoke with SA SC and another special agent. SA SC confirmed Appellee's desire to speak with NCIS despite his previous invocation of his right to have counsel present during the May 2021 interview; confirmed that Appellee understood that military defense counsel would be detailed only if charges were preferred; and confirmed that Appellee understood that he could have civilian counsel present at his own expense if he so desired. Then, SA SC re-advised Appellee of his rights. Appellee confirmed verbally and in writing that he understood and waived his rights to remain silent; to consult with an attorney prior to questioning; and to have retained or detailed counsel present during the interview. He also confirmed that he understood he could terminate the interview at any time for any reason. During the interview, he denied any wrongdoing, but at one point when he was left alone in the room, Appellee leaned back in his chair and said to himself, "Can't believe I messed up."

Before trial, the defense filed a motion to suppress the second interview. According to the "Defense Motion to Suppress Custodial Interrogation," Appellee was incorrectly advised by both his SNOIC and SA SC, and as a result, he did not understand that he had "an enumerated right" pursuant to the Fifth Amendment and Military Rule of Evidence (M.R.E.) 305 to have counsel present during the interview upon request. Conceding that Appellee voluntarily waived his right to have counsel present for his interview,

the defense argued that the waiver was not valid because it was neither knowing nor intelligent where Appellee mistakenly "believed that he could only have a lawyer present if he hired a civilian lawyer or if charges were preferred against him."

The Government opposed the motion in writing, arguing that Appellee was accurately advised, in accordance with Marine Corps policy,[1] that military defense counsel would not be detailed until charges were preferred and understood that he was under no obligation to speak to NCIS in the meantime. Moreover, the Government argued, Appellee voluntarily, knowingly, and intelligently waived his right to counsel and spoke with NCIS in an attempt to "get his version of events in front of NCIS before the investigation proceeded any further." Therefore, according to the Government, the waiver was valid and the second interview should not be suppressed.[2]

---

[1] The Government cited the Legal Support and Administration Manual (LSAM), *see infra* Part III.C., which requires detailing of defense counsel after an accused has been placed in pretrial confinement, served notice of preferred charges, or notified of an administrative separation/board of inquiry package or appointment of an Article 32, UCMJ, 10 U.S.C. § 832 (2018), investigating officer. The Government also cited a memorandum from the Chief Defense Counsel of the Marine Corps which requires detailing of defense counsel for personnel not in confinement only after preferral of charges or the appointment of an Article 32, UCMJ, preliminary hearing officer. *See* CDC Policy Memorandum 3.1D para. 4.d.(1)(b) (Nov. 6, 2020).

[2] In his dissent, the Chief Judge asserts that trial counsel made a "clear-cut" concession that Appellee "rated counsel." *See Flanner*, __ M.J. __, __ (3) (C.A.A.F. 2024) (Ohlson, C.J., dissenting). Even if we were bound by the Government's concession with respect to a matter that was not litigated during the hearing, which we are not, *see United States v. Budka*, 74 M.J. 219, 220 (C.A.A.F. 2015) (summary disposition) ("Neither the Court of Criminal Appeals, nor this Court, is bound by government concessions." (citing cases)), we do not view trial counsel's statements to concede, clearly or otherwise, that Appellee was subjected to a custodial interrogation. Viewed in context, trial counsel's statements merely emphasized that Appellee understood he

After considering the parties' arguments, the military judge made the following findings of fact:

> (1) "The actions of various actors in this case, to include the DSO, left the accused with an inaccurate belief that he could not be appointed a lawyer until charges were preferred."
>
> (2) "[T]he accused went forward with the interview without a lawyer, based on that misunderstanding."
>
> (3) Appellee's "actions showed that he truly desired to have an attorney": first, he invoked his right to have counsel present during his first interview; second, "[h]e then made two separate attempts to get an attorney by visiting the Defense Services Office, where he was turned away;" and third, he "asked his chain of command a number of questions about how he could get an attorney."

---

did not have to submit to an interview without counsel. Trial counsel explained:

> I understand why it would have been beneficial for the accused to say, well, I want to give my story out in front of NCIS before charges are ever preferred. And I'd like to have some attorneys here to do that. He could have done that with a civilian attorney or he could have just not made any statement at all.

Trial counsel continued, "I get why he wanted it, but that doesn't mean he raided [sic] it or was entitled to it." After a recess, trial counsel added:

> [J]ust to clarify, that obviously the [Appellee] rated counsel, but as he demonstrated by his invoking it in the first interview, . . . he knowingly— voluntarily, knowingly, and intelligently waived that right. He knew that if he invoked right to counsel, the interview would end because he had already did [sic] it once before. But he decided not to because he wanted to make a statement to NCIS.

(4) Appellee's efforts to get counsel "left him with the inaccurate belief, that he could not get an attorney until charges were preferred."

(5) "[W]anting to do the interview in order to get the investigation moving, as he was passed [sic] his EAS and had already moved his family, he acquiesced to an interview without having a lawyer present."

Based upon these findings, the military judge concluded that although the interview was voluntary, Appellee's waiver of the right to have counsel present during the interview was neither knowing nor intelligent. Accordingly, she granted the motion to suppress. In making this ruling, the military judge did not cite any authority for her belief that Appellee had a right to have appointed military defense counsel represent him at the second interview.

The NMCCA affirmed this decision, concluding that the military judge's findings of fact were not clearly erroneous and she did not abuse her discretion in determining that Appellee's waiver was not knowing or intelligent. *Flanner*, 2023 CCA LEXIS 428, at *9, *13, 2023 WL 6564919, at *3, *5. The NMCCA rejected the Government's argument, asserted for the first time on appeal, that because Appellee voluntarily appeared for the second interview, it was noncustodial and Appellee therefore had no right to counsel. *Id.* at *8-9, 2023 WL 6564919, at *3. Instead, the NMCCA assumed without deciding that Appellee had a Fifth Amendment right to counsel in the first interview which "reasonably carried over, through the intervening events, to the second interview." *Id.* at *9 n.42, 2023 WL 6564919, at *4 n.42.

Then, the NMCCA found no error in the military judge's finding that Appellee had a mistaken belief he would be detailed counsel only after charges were preferred. *Id.* at *11, 2023 WL 6564919, at *4. Citing the Marine Corps detailing policy the Government had identified in its opposition to the motion to suppress, the NMCCA reasoned that while military defense counsel *must* be detailed once charges are preferred, military defense counsel *may* be

detailed for a variety of reasons even before preferral; therefore, Appellee's belief that he could not get detailed counsel until charges were preferred was inaccurate. *Id.* at *11-12, 2023 WL 6564919, at *4.

Finally, the NMCCA held in light of the totality of the circumstances that the military judge did not err in concluding that Appellee's waiver of his right to counsel, while voluntary, was not knowing or intelligent. *Id.* at *12-13, 2023 WL 6564919, at *5. The NMCCA explained:

> [T]he military judge considered the situation Appellee was faced with when making his decision to sign the rights waiver, including his desire to move the investigation forward since he was past the end of his active duty service and had already moved his family. She also properly considered the steps Appellee took prior to agreeing to the interrogation, like visiting the DSO and talking to his chain of command in an effort to exercise his rights. The military judge also considered the evidence presented about the advice Appellee was given regarding whether he could be detailed military counsel and Appellee's "inaccurate belief that he could not get an attorney until charges were preferred." Given this evidence, we find that the military judge, quite reasonably, found that Appellee's waiver of his right to counsel was not made knowingly or intelligently because he did not have "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Therefore, the military judge's decision to suppress Appellee's statements to NCIS was well within the range of choices reasonably arising from the facts and the law.

*Id.* at *12-13, 2023 WL 6564919, at *5 (footnotes omitted).

## II. Standard of Review

In this Article 62, UCMJ, appeal, we directly review the military judge's decision and consider the evidence in the light most favorable to the party that prevailed at trial—in this case, Appellee. *United States v. Becker*, 81 M.J. 483, 488 (C.A.A.F. 2021). We review a military judge's ruling on

a motion to suppress evidence for an abuse of discretion. *United States v. Mott*, 72 M.J. 319, 329 (C.A.A.F. 2013). "'An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law.'" *Id.* (quoting *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008)). We review de novo any legal conclusions supporting the suppression ruling, including the question of whether the accused was in custody for purposes of *Miranda* warnings. *United States v. Chatfield*, 67 M.J. 432, 437 (C.A.A.F. 2009) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

## III. Discussion

The certified question asks whether the military judge abused her discretion in suppressing Appellee's second interview. To answer this question, we must first consider Appellee's assertions that he had a right to appointed military defense counsel during the second interview pursuant to (A) the Fifth Amendment, as implemented by M.R.E. 305, (B) Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2018), and (C) Marine Corps policy. If we determine that he had such a right, we must then determine whether he waived that right, and if there was no waiver, whether there was a violation of Appellee's right to counsel.

We conclude that none of these sources gives Appellee a right to appointed military defense counsel during a noncustodial, pre-preferral, self-scheduled interview, and therefore, we need not determine whether Appellee waived such a right. Accordingly, we hold that the military judge abused her discretion in suppressing Appellee's second interview.

### A. Appellee Did Not Have a Fifth Amendment Right to Appointed Military Defense Counsel During the Second Interview

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The Supreme Court has interpreted the Fifth Amendment privilege against self-incrimination to encompass two distinct rights: the right to

9

silence and the right to counsel specifically during pretrial questioning." *United States v. Seay*, 60 M.J. 73, 77 (C.A.A.F. 2004).

In *Miranda*, the Supreme Court held that "if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent," and "has the right to consult with a lawyer and to have the lawyer with him during interrogation." 384 U.S. at 467-68; *see also United States v. Tempia*, 16 C.M.A. 629, 635, 37 C.M.R. 249, 255 (1967) (explaining that the Supreme Court's decision in *Miranda* applies to the military justice system). In accordance with *Miranda*, if a person in custody indicates that he wants an attorney, "the interrogation must cease until an attorney is present." 384 U.S. at 474.

The Fifth Amendment right to counsel applies only during custodial interrogations. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) ("*Miranda* safeguards come into play *whenever a person in custody* is subjected to either express questioning or its functional equivalent." (emphasis added)). "To be considered in custody for purposes of *Miranda*, a reasonable person in [the accused]'s position must have believed he or she was restrained in a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.' " *Chatfield*, 67 M.J. at 438 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)). In *United States v. Mitchell*, this Court explained that to determine whether an individual was subjected to a custodial interrogation, courts consider:

> (1) whether the person appeared for questioning voluntarily; (2) the location and atmosphere of the place in which questioning occurred . . . [;] (3) the length of the questioning . . . [;] [(4)] the number of law enforcement officers present at the scene[;] and [(5)] the degree of physical restraint placed upon the suspect.

76 M.J. 413, 417 (C.A.A.F. 2017) (alterations in original) (citations omitted) (internal quotation marks omitted).

Appellee's motion to suppress was entitled, "Defense Motion to Suppress Custodial Interrogation." Despite the title, the defense did not argue in the motion or during the motion hearing that the second interview was a custodial interrogation. To the contrary, the defense acknowledged that at the time of the second interview, Appellee "was not in continuous custody." The military judge orally granted the motion to suppress without expressly ruling on whether the second interview was a custodial interrogation.

Whether an individual is in custody is a question of law we review de novo. *Chatfield*, 67 M.J. at 437. Considering the factors set forth in *Mitchell*, we conclude that Appellee's second interview was not a custodial interrogation, and therefore, he had no Fifth Amendment right to counsel during the second interview.[3] *See United States v. Evans*, 75 M.J. 302, 305 (C.A.A.F. 2016) (explaining that the "[a]ppellant was not subjected to a custodial interrogation and therefore suffered no violation of his Fifth Amendment rights under *Miranda*"). We reach this conclusion for several reasons. Appellee initiated the second interview to further the investigation in the hope of reuniting with his

---

[3] For the same reasons, we conclude that M.R.E. 305(c)(2) did not guarantee Appellee counsel during the second interview because it was a noncustodial interview. M.R.E. 305(c)(2) implements the Fifth Amendment right to counsel, and provides:

> If a person suspected of an offense and *subjected to custodial interrogation* requests counsel, any statement made in the interrogation after such request, or evidence derived from the interrogation after such request, is inadmissible against the accused unless counsel was present for the interrogation.

(Emphasis added.)

As with the Fifth Amendment right to counsel, if a person invokes their right to counsel under M.R.E. 305(c)(2), then "questioning must cease until counsel is present." M.R.E. 305(c)(4).

family, and he voluntarily appeared at the scheduled time. *See Chatfield*, 67 M.J. at 438 (finding an interview to be noncustodial when an individual voluntarily went to a police station for questioning not under express orders from a superior). Although two NCIS agents conducted the interview at an NCIS office and Appellee knew he was a suspect, an interview does not become custodial "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977); *see also Chatfield*, 67 M.J. at 438 (explaining that "there is no per se rule that whenever a suspect appears at a police station for questioning, the suspect is therefore in custody"). Additionally, Appellee joked and laughed with the agents over the course of about two and a half hours. *See Beckwith v. United States*, 425 U.S. 341, 342-48 (1976) (finding that an interview in a private residence that lasted for about three hours was not a custodial interrogation). He acknowledged that he could stop the interview at any time, and when questioning concluded and Appellee had nothing more to say, he left.

Under these circumstances, "the atmosphere of the interview would have made it transparent to a reasonable person in [Appellee's] position that he was not subject to 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Chatfield*, 67 M.J. at 439 (quoting *Beheler*, 463 U.S. at 1125). Thus, the second interview "did not contain the 'inherently compelling pressures' with which the *Miranda* Court was concerned." *Id.* (quoting *Miranda*, 384 U.S. at 467).

Before this Court, Appellee concedes that the second interview was not a custodial interrogation but argues that the military judge properly suppressed the second interview because he did not knowingly and intelligently waive the right to counsel he had previously invoked during the first interview. We disagree with the implication that a Fifth Amendment right to counsel extends beyond the

bounds of a custodial interrogation.[4] In *Edwards v. Arizona*, the Supreme Court held that the appellant did not waive his right to have counsel present by submitting to a second custodial interrogation one day after he had invoked that right at an initial custodial interrogation. 451 U.S. 477, 482 (1981). In that case, police approached the appellant who was being held at the county jail and interviewed him for the second time despite his initial invocation and his continuing insistence that he did not want to speak with anyone. *Id.* at 479. The Supreme Court held "that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484. However, the Supreme Court limited its holding to cases where the first custodial interview is followed by a second *custodial* interview, stating:

> Had Edwards initiated the [second] meeting . . . nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial. The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver.

*Id.* at 485-86.[5]

---

[4] Although we review the military judge's ruling directly in an Article 62, UCMJ, appeal, we note that the NMCCA affirmed the military judge's ruling, concluding that "Appellee's invocation of his Fifth Amendment right to counsel in the initial interrogation reasonably carried over, through the intervening events, to the second interview." *Flanner*, 2023 CCA LEXIS 428, at *9 n.42, 2023 WL 6564919, at *4 n.42. We reject this conclusion as inconsistent with prior precedent. *See infra* pp. 13-15.

[5] This Court's predecessor reached a similar conclusion in *Tempia*. In *Tempia*, during a custodial interrogation the

In this case, even assuming the first interview was a custodial interrogation implicating the Fifth Amendment, NCIS scrupulously honored the law by terminating the interview as soon as Appellee indicated that he wanted counsel to be present during questioning. Four months later, Appellee contacted NCIS and scheduled the second interview. Consistent with *Edwards*, we need not decide whether Appellee waived his Fifth Amendment right to counsel in the second interview because we conclude that he had no such right in a noncustodial interview he initiated months after his initial invocation. *Id.*; *see also Innis*, 446 U.S at 298 n.2 (explaining that "[s]ince we conclude that the respondent was not 'interrogated' for *Miranda* purposes, we do not reach the question whether the respondent waived his right under *Miranda* to be free from interrogation until counsel was present").[6]

---

appellant asserted his right to counsel, the interview ended, and he was free to leave. 16 C.M.A. at 632, 37 C.M.R. at 252. Less than an hour later, the appellant was ordered to an OSI office, making the ensuing interview a custodial interrogation. *Id.* at 632, 636, 37 C.M.R. at 252, 256. While at the OSI office, he was informed that he would not be appointed counsel to represent him for an investigation and then agreed to be interviewed. *Id.* at 632-33, 37 C.M.R. at 252-53. The military judge suppressed the interview because the appellant was improperly advised of his right to counsel under *Miranda*. *Id.* at 637, 37 C.M.R. at 257. Although the case before this Court is similar to *Tempia* in that there was an initial interview where the appellant invoked his right to counsel, it is distinguishable because the subsequent interview in *Tempia* was custodial whereas the subsequent interview in this case was not.

[6] Although not raised by Appellee, we note that neither the Sixth Amendment right to counsel nor its implementing rule provided Appellee with a right to counsel in the second interview. " '[I]t has been firmly established that a person's Sixth . . . Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him.' " *United States v. Gouveia*, 467 U.S. 180, 187-88 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 688 (1972)). In the military, the Sixth Amendment right to counsel attaches upon preferral of charges. *United States v. Harvey*, 37 M.J. 140, 141

**B. Appellee Did Not Have a Right to Appointed Military
Defense Counsel Under Article 31(b), UCMJ,
During the Second Interview**

On appeal, Appellee contends that his statutory rights under Article 31(b), UCMJ, are broader than his *Miranda* rights and afford him a right to appointed counsel notwithstanding the noncustodial setting of his second interview. For the reasons explained below, we conclude, first, that the protections afforded by Article 31(b), UCMJ, were applicable during Appellee's second interview even though it was not a custodial interrogation; but second, that Article 31(b), UCMJ, did not guarantee a right to have appointed military defense counsel present during the interview.

"Article 31(b), UCMJ, is a statutory precursor to *Miranda* warnings that implements the Article 31(a), UCMJ, privilege against compulsory self-incrimination." *Evans*, 75

---

(C.A.A.F. 1993). Because no charges had been preferred at the time of Appellee's second interview, he had no Sixth Amendment right to counsel during that interview.

The Sixth Amendment right to counsel is implemented in M.R.E. 305(c)(3), which also applies only after charges have been preferred. M.R.E. 305(c)(3) states:

> If an accused *against whom charges have been preferred* is interrogated on matters concerning the preferred charges by anyone acting in a law enforcement capacity, or the agent of such a person, and the accused requests counsel, or if the accused has appointed or retained counsel, any statement made in the interrogation, or evidence derived from the interrogation, is inadmissible unless counsel was present for the interrogation.

(Emphasis added.) If a person invokes their right to counsel under M.R.E. 305(c)(3), then "questioning must cease until counsel is present." M.R.E. 305(c)(4).

15

M.J. at 304-05 (footnote omitted).[7] Article 31(b), UCMJ, states:

> No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

This Court recently observed that " '[a] servicemember's protection against compulsory self-incrimination is unparalleled in the civilian sector' because '[t]his fundamental right is protected by both the Fifth Amendment *and* Article 31, UCMJ.' " *United States v. Nelson*, 82 M.J. 251, 255 (C.A.A.F. 2022) (second alteration in original) (quoting *United States v. Mapes*, 59 M.J. 60, 65 (C.A.A.F. 2003) (emphasis added)). Thus, while the Fifth Amendment guarantees that no person shall be compelled to be a witness against himself in a criminal case, Article 31(a), UCMJ, guarantees that no person subject to the UCMJ shall

---

[7] Article 31(b), UCMJ, is reflected in M.R.E. 305(c)(1), which states:

> Pursuant to Article 31, a person subject to the code may not interrogate or request any statement from an accused or a person suspected of an offense without first:
>
> > (A) informing the accused or suspect of the nature of the accusation;
> >
> > (B) advising the accused or suspect that the accused or suspect has the right to remain silent; and
> >
> > (C) advising the accused or suspect that any statement made may be used as evidence against the accused or suspect in a trial by court-martial.

Like Article 31(b), M.R.E. 305(c)(1) does not require a warning about an accused's or suspect's right to counsel.

"compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him." 10 U.S.C. § 831(a) (2018).

The purpose of the Article 31(b), UCMJ, warning requirement is to provide "members of the armed forces with statutory assurance that the standard military requirement for a full and complete response to a superior's inquiry does not apply in a situation when the privilege against self-incrimination may be invoked." *United States v. Swift*, 53 M.J. 439, 445 (C.A.A.F. 2000). To this end, this Court has held "that Article 31(b), UCMJ, rights are in certain respects more extensive than those provided under the Fifth Amendment." *Evans*, 75 M.J. at 305. Specifically, Article 31(b), UCMJ, warnings must be given to anyone "suspected of an offense" while *Miranda* warnings only need to be given to those subject to "custodial interrogation." *Swift*, 53 M.J. at 445 (internal quotation marks omitted) (citations omitted).

In another respect, Article 31(b), UCMJ, warnings are narrower than *Miranda* warnings. *Miranda* requires a warning about the rights to consult with counsel and to have counsel present during questioning. Article 31(b), UCMJ, on the other hand, is silent as to a servicemember's rights to counsel. *United States v. Rogers*, 47 M.J. 135, 136 n.1 (C.A.A.F. 1997) (providing a chart of differences between Article 31(b), UCMJ, and *Miranda* warnings).

As a servicemember subject to questioning by NCIS, Appellee was entitled to the protections afforded by Article 31, UCMJ. However, those protections do not include a right to counsel. Therefore, we reject Appellee's assertion that he had a statutory right to counsel in the second interview.[8]

---

[8] We note that Article 27, UCMJ, 10 U.S.C. § 827 (2018), requires the detailing of counsel for an accused after charges have been referred to a general or special court-martial; it does not create a right to counsel before charges have been preferred. Appellee does not argue that he was entitled to appointed military defense counsel pursuant to Article 27, UCMJ.

Additionally, we are unpersuaded by Appellee's argument that this Court's decision in *Mott* establishes a statutory right to counsel in a noncustodial interrogation. In *Mott*, this Court was faced with the question of whether an accused who could not, due to mental illness, understand his rights or the consequences of waiving them could voluntarily, knowingly, and intelligently waive his right to counsel in a custodial interrogation. 72 M.J. at 321. In outlining the contours of its waiver analysis, the Court noted that an accused's statement during a custodial interrogation is inadmissible at trial unless the government can establish that the accused knowingly and voluntarily waived his *Miranda* rights. *Id.* at 330. In a footnote, the Court added:

> Consistent with our precedents, we note that in the military system the accused's right to counsel—and the requirement of knowing and voluntary waiver—are not limited to *custodial* interrogation. *See United States v. Delarosa*, 67 M.J. 318, 320 (C.A.A.F. 2009) ("Military officials and civilians acting on their behalf are required to provide rights warnings prior to interrogating a member of the armed forces if that servicemember is a suspect, irrespective of custody. Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2000); Military Rule of Evidence (M.R.E. 305(b)(1), 305(c).").

*Id.* at 330 n.10.

This footnote is an incorrect statement of the law and was not required for the holding in *Mott*. While it is true that the Article 31(b), UCMJ, rights cited in the *Mott* footnote extend beyond custodial interrogations, as noted above there is no right to counsel in Article 31(b), UCMJ. Nor does *Delarosa*, the case relied on in *Mott*, support that conclusion. In *Delarosa*, we held only that the military judge did not err in denying a motion to suppress the accused's confession where he never unambiguously invoked his *Miranda* right to remain silent and his confession was voluntarily, knowingly, and intelligently given. 67 M.J. at 326. Indeed, the Court explicitly acknowledged in *Delarosa* that "[t]he present appeal involves only . . . rights warnings

under *Miranda* for persons in custody." *Id.* at 320. Therefore, the Court in *Delarosa* did not consider the accused's statutory rights or the applicability of either statutory or constitutional rights in a noncustodial setting.

Even if the *Mott* footnote was an accurate statement of the law, its comment on a servicemember's statutory right to counsel was not relevant to the *Miranda* issue before the Court in *Mott*. Because the *Mott* footnote was not required for the holding in that case, it is dicta. "[D]icta involves the consideration of 'abstract and hypothetical situations not before [the court].'" *Bohannan v. Doe*, 527 F. App'x 283, 300 (5th Cir. 2013) (quoting *Connecticut v. Doehr*, 501 U.S. 1, 30 (1991) (Rehnquist, C.J., concurring)); *see also Obiter Dictum, Black's Law Dictionary* (11th ed. 2019) (defining "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)"). The Supreme Court has explained:

> It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought *not to control the judgment* in a subsequent suit when the very point is presented for decision.

*Cohens v. Virginia*, 19 U.S. 264, 399 (1821) (emphasis added). Thus, "we are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated." *Central Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006); *see, e.g., United States v. Griffin*, No. NMCM 96 01264, 1996 CCA LEXIS 458, at *4, 1996 WL 927624, at *2 (N-M. Ct. Crim. App. Sept. 30, 1996) (unpublished) (declining to rely on dicta to find legal error); *United States v. Dimberio*, 52 M.J. 550, 559 (A.F. Ct. Crim. App. 1999) (rejecting appellant's reliance on a case that was factually inapposite and itself relied on dicta); *United States v. Alexander*, 29 C.M.R. 616, 617 (A.C.M.R. 1960) (rejecting appellant's reliance on "completely erroneous" dicta).

Applying that principle in this case, we conclude that the *Mott* footnote and *Delarosa* were not binding on the military judge and are not binding on this Court's determination whether Appellee had a statutory right to counsel because the *Mott* footnote is an incorrect statement of the law and neither opinion squarely addressed the question at issue here: whether an accused has a statutory right to counsel in a noncustodial setting when no charges have been preferred.

### C. Appellee Did Not Have a Right to Appointed Military Defense Counsel Under Marine Corps Policy During the Second Interview

As explained above, Appellee did not have a right to appointed counsel for a noncustodial interview he initiated prior to preferral of charges; however, the Chief Defense Counsel of the Marine Corps had discretionary authority to direct the appointment of counsel pursuant to Marine Corps policy. Under the LSAM:

> The responsible detailing authority shall detail a defense counsel in writing to a particular case as soon as practicable. Absent good cause, the detailing authority shall detail a defense counsel within:
>
> A. Ten days of being notified via e-mail, fax, or other written means by corrections personnel, command representatives, the military justice section, or some other government official that an accused has been placed in pretrial confinement or arrest under R.C.M. 305.
>
> B. Five days of being served notice of preferred charges.
>
> C. Five days of being served notice of the appointment of an Article 32, UCMJ, Investigating Officer.
>
> D. Five days of being served an administrative separation/board of inquiry package.
>
> E. As otherwise required by law or regulation.

Dep't of the Navy, Marine Corps Order 5800.16-V3, Legal Support and Administration Manual para. 011004 (Feb. 20, 2018).

At the time of Appellee's second interview, Appellee was not in pretrial confinement or arrest; no charges had been preferred; an Article 32, UCMJ, investigating officer had not been appointed; and no administrative separation/board of inquiry package had been served. Therefore, the detailing authority was under no obligation to detail defense counsel to Appellee under provisions (A) through (D) of para. 011004.

Appellee has not identified any other law or regulation that guaranteed him counsel under provision (E) of para. 011004. In addition to the mandatory detailing authorities listed in the LSAM, the detailing authority has discretionary authority pursuant to CDC Policy Memorandum 3.1D to detail military defense counsel when "determined necessary" in a variety of instances, to include to "servicemembers pending investigation . . . by any law enforcement agency, when the detailing authority reasonably believes that such an investigation may result in court-martial, non-judicial punishment, or adverse administrative action." CDC Policy Memorandum 3.1D para. 3.a.(4). Counsel may also be detailed "in any other situation which, in the judgement [sic] of the CDC, meets the spirit and intent of [the LSAM], meets other applicable laws and regulations, and best serves the interests of justice." *Id.* para. 3.a.(8).

These policy provisions permit but do not require detailing of counsel. Although Appellee could have received military counsel pursuant to these policy provisions, the detailing authority was not obligated to appoint military defense counsel prior to preferral of charges and did not exercise the discretionary power to do so even after Appellee twice visited the DSO seeking legal services. Because we conclude that no violation of the Marine Corps policy occurred, we do not address the separate issue of whether it would have been an abuse of discretion for the military judge to suppress Appellee's statements as a remedy for such a policy violation.

**D. The Military Judge Abused Her Discretion**

Having answered the preliminary questions, we now turn to the certified question: whether the military judge abused her discretion in suppressing Appellee's second interview. For the reasons given below, we conclude that she did.

Under M.R.E. 304(a), "an involuntary statement from the accused, or any evidence derived therefrom, is inadmissible at trial except as provided in subdivision (e)."[9] " 'Involuntary statement' means a statement obtained in violation of the self-incrimination privilege or Due Process Clause of the Fifth Amendment to the United States Constitution, Article 31, or through the use of coercion, unlawful influence, or unlawful inducement." M.R.E. 304(a)(1)(A) (2019 ed.).

The military judge ruled that Appellee's second NCIS interview should be suppressed because Appellee did not give a valid waiver of his pretrial right to counsel. According to the military judge, "[t]he actions of various actors in this case, to include the DSO, left the accused with an inaccurate belief that he could not be appointed a lawyer until charges were preferred." Thus, according to the military judge, "the [second] interview, although voluntary, was not based on a knowing and intelligent understanding of the right that he abandoned when he acquiesced to proceed without having an attorney present."

We conclude that the military judge's ruling to suppress Appellee's second interview is an abuse of discretion because it was "influenced by an erroneous view of the law." *Mott*, 72 M.J. at 329 (internal quotation marks omitted) (citations omitted). The military judge erred in two respects.

---

[9] The exceptions are "(1) to impeach by contradiction the in-court testimony of the accused; or (2) in a later prosecution against the accused for perjury, false swearing, or the making of a false official statement." M.R.E. 304(e)(1)-(2) (2019 ed.). Neither of these exceptions is at issue in the case before this Court.

First, the military judge erred in assuming without deciding that Appellee had a right to appointed military defense counsel during the second interview. As discussed above, neither the Constitution, Article 31, UCMJ, nor Marine Corps policy guaranteed Appellee appointed military defense counsel for a noncustodial interview prior to preferral of charges.[10] And even if Appellee had a pretrial right to appointed military defense counsel in the first interview, it did not carry over to the second interview initiated four months later by Appellee, where he was re-advised and acknowledged he understood his rights to remain silent and to have counsel present during the second interview.

Second, the military judge erred in concluding that Appellee was mistaken in believing he could not be appointed military defense counsel until charges were preferred. Appellee had no constitutional or statutory right to appointed counsel at the time of the second interview. Under Marine Corps policy, he *could* have been appointed counsel for the second interview, subject to the discretion of the detailing authority. However, he had twice sought legal services from the DSO and twice, he left without having secured appointed counsel. Under the circumstances, he was accurately advised by the SNOIC and SA CS that he would not receive detailed military defense counsel until charges were preferred. *See* Article 27, UCMJ; *Harvey*, 37 M.J. at 141 (explaining that the Sixth Amendment right to counsel attaches upon preferral of charges). Thus, Appellee's belief that he would only get appointed counsel if charges were preferred was proper and the military judge abused her discretion in finding otherwise.

"[S]ervicemembers [do not] enjoy due process protections above and beyond the panoply of rights provided to them by the plain text of the Constitution, the UCMJ, and

---

[10] To the extent the military judge relied on dicta in this Court's opinion in *Mott* to find a right to counsel in a noncustodial interview, this too was an abuse of discretion, where the dicta is itself an incorrect statement of the law unsupported by the cited authorities. *See supra* pp. 18-20.

the *MCM.*" *United States v. Vazquez*, 72 M.J. 13, 19 (C.A.A.F. 2013). Having concluded Appellee had no right to appointed military defense counsel during the second interview, we need not answer whether any such right was waived. We hold that the military judge abused her discretion by granting the motion to suppress.

## IV. Conclusion

We answer the certified question in the affirmative. The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The case is returned to the Judge Advocate General of the Navy for remand to the military judge for further proceedings consistent with this opinion.

Chief Judge OHLSON, dissenting.

It is a truism, of course, that military judges abuse their discretion when they misapprehend and misapply the law. And as the majority opinion correctly notes, the military judge in this case did both. Specifically, the military judge mistakenly concluded that Appellee had a right to appointed military counsel during noncustodial, pre-preferral questioning, and she consequently granted a defense motion to suppress Appellee's statement to law enforcement officers. However, the military judge's misstep is only one facet of the entire story here. The broader reality is that *this* Court bears responsibility for sowing seeds of legal confusion about whether a servicemember has a right to appointed military counsel during noncustodial questioning. Indeed, as will be explained in further detail below, the language this Court employed in *United States v. Mott*, 72 M.J. 319, 330 n.10 (C.A.A.F. 2013), was so misleading that it caused not only this military judge but also a service court of criminal appeals in an unrelated case to reach the wrong conclusion about what the law actually requires. Moreover, during motions proceedings before the military judge, it was *Government* counsel who repeatedly cited *Mott* in his written filings and then wrongly proclaimed during the motions hearing that Appellee had indeed been entitled to appointed military counsel during questioning.

These peculiar circumstances raise important questions. Namely, should this Court just simply declare that the military judge's ruling was outside the range of reasonable choices because she got the law wrong, and then pronounce that she therefore abused her discretion? Or should this Court instead openly acknowledge the role *we* have played in muddling the law, decline to find that the military judge abused her discretion because the law was unsettled by the language we used in *Mott*, and then use this case to unequivocally state the *correct* view of the law going forward? I concede that it is a close call. Ultimately, however, I conclude that adherence to the tenets of the oft-employed "abuse of discretion" standard requires us to hold that the military judge in this case did *not* abuse her discretion because of the confusion *we* created regarding the applicable law. Thus, I would hold in favor of Appellee in

this case—Staff Sergeant Flanner—and affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals. Because the majority holds to the contrary, I respectfully dissent.

One important point must be made clear at the outset of this opinion. Namely, under applicable laws and regulations, a servicemember does *not* have a *right* to appointed military counsel when being questioned during a *pre-preferral*, *noncustodial* interview. Full stop.[1] There is no daylight between my position on this issue and that of the majority. But as indicated above, I believe this case is about far more than just this basic legal principle. And it all begins with a fateful footnote.

In the *Mott* opinion, this Court stated as follows:

> Consistent with our precedents, we note that in the military system the accused's right to counsel—and the requirement of knowing and voluntary waiver—are not limited to *custodial* interrogation. *See United States v. Delarosa*, 67 M.J. 318, 320 (C.A.A.F. 2009) ("Military officials and civilians acting on their behalf are required to provide rights warnings prior to interrogating a member of the armed forces if that servicemember is a suspect, irrespective of custody. Article 31(b), [Uniform Code of Military Justice (UCMJ)], 10 U.S.C. § 831(b) (2000); Military Rule of Evidence (M.R.E.) 305(b)(1), 305(c).").

72 M.J. at 330 n.10. As can be seen, this passage stakes out the position that a servicemember has a right to military counsel even in noncustodial situations. Moreover, in making this point, the *Mott* Court invoked our own

---

[1] The Chief Defense Counsel of the Marine Corps (CDC) has issued a policy memorandum for detailing military defense counsel. This memorandum provides the *discretionary* "authority to detail defense counsel" pre-preferral if the "circumstances [are] determined necessary," including if a servicemember is "pending investigation . . . by any law enforcement agency, when the detailing authority reasonably believes that such an investigation may result in court-martial." CDC Policy Memorandum 3.1D para. 3.a.(4) (Nov. 6, 2020). But this authority to detail military counsel does not translate into a *right* to military counsel.

"precedents." And yet the only precedent that is specifically cited—*United States v. Delarosa*—does not stand for the proposition that this Court claimed.[2] Indeed, *no* precedent of this Court has stated that, without more, a servicemember has a right to military counsel during a noncustodial interrogation.

Nevertheless, the damage was done. Indeed, the fact that in *Mott* this Court managed to bollix up the law is amply demonstrated by the case of *United States v. Davis*. There, the United States Army Court of Criminal Appeals pointed directly to the language in *Mott* when determining that "the distinction between custodial and non-custodial interrogation in the military context appears irrelevant" because "[the U.S. Court of Appeals for the Armed Forces has] extend[ed] counsel rights . . . to accused who are only subjected to mere non-custodial interrogation." *United States v. Davis*, No. ARMY 20160069, 2018 CCA LEXIS 417, at *11, 2018 WL 3996488, at *4 (A. Ct. Crim. App. Aug. 16, 2018) (unpublished). If our *Mott* decision caused a service court of criminal appeals to conclude upon reflection and consideration that we had extended counsel rights to noncustodial interrogations, how can we now claim in good faith that this military judge, who was operating under the significant time pressures imposed by a trial docket, should have known better?

This misunderstanding of the law also extended to the Government counsel in this case. During arguments on the defense motion to suppress Appellee's statement, it was the *trial* counsel who told the military judge: "[O]bviously the accused rated counsel."[3] Although the Government's concession is not binding on this Court, this clear-cut

---

[2] *Delarosa* discussed the "rights warnings" of "a person *in custody*" and held that the appellant waived his *Miranda* rights. 67 M.J. 318, 320, 325 (C.A.A.F. 2009) (emphasis added).

[3] In the Marine Corps, the phrase "rated counsel" is synonymous with the right of a servicemember to have appointed military counsel. *See Merriam Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/rated (last visited Sept. 16, 2024) (defining "rated" as "to have a right to").

statement demonstrates that not only the military judge but also the trial counsel misunderstood the applicable law. Moreover, I note that the Government adopted this erroneous position after repeatedly citing to *Mott* in its motions filings. Further, this was not an uninformed or inadvertent remark by trial counsel. Instead, it occurred after a recess in which trial counsel acknowledged that he had "had an opportunity to talk to . . . supervisory counsel" about this point. Thus, the military judge's ruling that there was a right to appointed counsel for Appellee's pre-preferral, noncustodial interrogation must be examined in the context of trial counsel's erroneous concession, and that erroneous concession certainly appears to have been tainted by our flawed language in *Mott*.

On appeal, the Government understandably questions whether this Court can definitively know whether the military judge relied on the *Mott* footnote in reaching her decision in this case. Indeed, the parties at trial did not specifically cite this footnote, and the military judge did not cite *any* case law in her oral ruling. However, as stated above, the parties frequently cited to the *Mott* opinion in their filings, so presumably they knew what *Mott* said—including the infamous footnote. Also, as Appellee's counsel noted at oral argument before this Court, "the military judge was clearly relying on *Mott*" when "she signaled the test this Court established in *United States v. Mott*" as the basis for determining whether there was a waiver of counsel rights. Oral Argument at 31:12-31:28, *United States v. Flanner* (C.A.A.F. May 7, 2024) (No. 24-0093). Therefore, it requires no stretch of the imagination to conclude that the *Mott* footnote was part of the military judge's legal calculus when she found Appellee, who was not in custody, held "an inaccurate belief" that he was not entitled to appointed military counsel "until charges were preferred."

As the majority opinion correctly observes, it is important to acknowledge that the *Mott* footnote is rife with weaknesses. To start, it is dicta because the appellant in *Mott* was already in custody during his questioning. *See* 72 M.J. at 322. Next, the authorities cited by this Court to support the notion that there is a noncustodial right to

appointed counsel—*Delarosa*,[4] Article 31(b),[5] and M.R.E. 305(b)(1), (c) (2008 ed.)[6]—do not, in fact, support that proposition. 72 M.J. at 330 n.10. And finally, absent *Mott*, all of the relevant legal authorities make it clear that there is no *right* to appointed counsel during pre-preferral, noncustodial interviews. *See United States v. Flanner*, __ M.J. __, __ (13-15, 17-22) (C.A.A.F. 2024) (citing authorities); *see also United States v. Mitchell*, 76 M.J. 413, 417 (C.A.A.F. 2017); M.R.E. 305(d), (e)(3) (2019 ed.). But despite these weaknesses, the *Mott* footnote still says what it says, and it notably refers to unnamed "precedents," suggesting that this Court was merely summarizing well-settled military law. *One can hardly blame a military judge for accepting at face value a legal proposition that this Court has baldly proclaimed in a published opinion.* Even the Government at oral argument admirably conceded that the *Mott* footnote "puts judges in a difficult position." Oral Argument at 14:17-14:22.

Because this Court's footnote in *Mott* states that a servicemember's "right to counsel . . . [is] not limited to custodial interrogation[s]," 72 M.J. at 330 n. 10, and because the trial counsel in this case went along with this misunderstanding of the law as applied to this case, I cannot conclude in good faith that the military judge's ruling was "outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Shields*, 83 M.J. 226, 230 (C.A.A.F. 2023) (citation omitted) (internal quotation marks omitted). Therefore, in light of this Court's muddling of the law, I do not believe it can be said that the military judge abused her discretion. Because the majority reaches a contrary conclusion, I respectfully dissent.

---

[4] As discussed above, *Delarosa* discussed rights warnings for servicemembers *in custody*.

[5] Article 31(b) concerns warnings to a suspect about the right to remain silent. By its plain terms, this provision "does not confer a right to assistance of counsel." *United States v. Lincoln*, 42 M.J. 315, 321 (C.A.A.F. 1995).

[6] These M.R.E. provisions merely implement Article 31(b). *See* M.R.E. 305(c) (2008 ed.).

Judge SPARKS, dissenting.

I join the Chief Judge in dissenting from the majority's conclusion that the military judge abused her discretion by considering *United States v. Mott*, 72 M.J. 319, 330 n.10 (C.A.A.F. 2013). However, beyond that, I am compelled to express my disagreement with the majority opinion. The majority's focus on Appellee's claim to have had a right to counsel during a noncustodial law enforcement interview misses the point of what happened in this case and, in my view, sidesteps the real issue at stake. The central question here is whether Appellee fully understood the scope of the right to counsel he invoked at the first interview before deciding to proceed with questioning at the second interview.

## I. Background

When the Naval Criminal Investigative Service (NCIS) first attempted to interrogate Appellee, Special Agent (SA) SC advised him of his rights prior to the interview, including his right to counsel. Appellee indicated on the written rights form that he "would like to have a lawyer present during questioning," so SA SC properly ended the interview. After the truncated interview, Appellee visited the base Defense Service Office (DSO) twice in the hope of speaking to an attorney. The record does not further illuminate who Appellee spoke to at the DSO, what he told them, or what information he received. There is no evidence in the record that Appellee ever spoke to a lawyer at the DSO.[1]

After approximately four months passed without Appellee receiving any updates on the investigation, he

---

[1] In its background section, the majority states that "[a]ccording to his trial defense counsel, in May of 2021, Appellee spoke with an attorney." *United States v. Flanner*, __ M.J. __, __ (3) (C.A.A.F. 2024). In their written motion to suppress, trial defense counsel stated that Appellee spoke to an attorney at the DSO. However, counsel cited Appellee's declaration, which was provided as Enclosure 2 to the motion. In that declaration, Appellee only stated that he went to the DSO to seek legal services, not that he ever actually spoke to an attorney. The military judge found only that Appellee "made two separate attempts to get an attorney by visiting the Defense Services Office, where he was turned away."

consulted his staff noncommissioned officer-in-charge (SNOIC) about whether he would get appointed military counsel at an NCIS interview. The SNOIC spoke with the command staff judge advocate (SJA) and told Appellee that he "would only receive counsel if charges were preferred." In a witness interview, the SNOIC recalled that the SJA told him there was not much the Marine Corps Legal Services Support Section could do for Appellee "because he wasn't legally charged for something." When interviewed, the SJA clarified twice that he made sure to let the SNOIC know that the information could not be passed to Appellee as legal advice because the SJA was not his attorney. Again, there is no indication Appellee spoke to a lawyer himself.

Appellee interpreted the second-hand advice he received from the SNOIC to mean that he "could not do an interview with military counsel present." Wanting to move forward with the case, Appellee then decided to contact the NCIS case agent and requested an interview without counsel present. On September 15, 2021, four months after NCIS had initiated the first interview, Appellee went in for an interview with SA SC. SA SC asked Appellee if he wanted to speak with her because, when he came in previously, he had requested a lawyer. Appellee told SA SC that his command had explained his right to counsel to him and he now understood he could not be appointed a lawyer until charges were preferred. SA SC then reviewed a rights advisement form with Appellee and Appellee signed it.

The standard acknowledgement and cleansing waiver of rights signed by Appellee contained two lines about the right to counsel. It informed him that:

> I have the right to consult with a lawyer prior to any questioning. This lawyer may be a civilian lawyer retained by me at no cost to the United States, a military lawyer appointed to act as my counsel at no cost to me, or both;
>
> . . . I have the right to have my retained civilian lawyer and/or appointed military lawyer present during this interview.

However, despite these rights and despite his best efforts, there is no indication Appellee ever consulted directly with an attorney.

Charges were not preferred until November 18, 2022, over eighteen months after Appellee's initial interview with NCIS. Appellee finally had access to an attorney when defense counsel was detailed to him in early December 2022.

The military judge granted defense counsel's motion to suppress based on her determination that Appellee had been given "an inaccurate belief that he could not be appointed a lawyer until charges were preferred." She determined that Appellee "made two separate attempts to get an attorney by visiting the Defense Services Office, where he was turned away" and "asked his chain of command a number of questions about how he could get an attorney." The lower court found that these findings of fact were not clearly erroneous. *United States v. Flanner,* No. NMCCA 202300134, 2023 CCA LEXIS 428, at *9, 2023 WL 6564919, at *3 (N-M. Ct. Crim. App. Oct. 10, 2023) (unpublished). The military judge concluded that Appellee "went forward with the interview without a lawyer present," even though "[h]is actions showed that he truly desired to have an attorney," and that "the interview, although voluntary, was not based on a knowing and intelligent understanding of the right that he abandoned when he acquiesced to proceed without having an attorney present."

## II. Analysis

"In an Article 62, UCMJ, appeal, this Court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial," which in this case is Appellee. *United States v. Becker*, 81 M.J. 483, 488 (C.A.A.F 2021) (quoting *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017)). "On matters of fact with respect to appeals under Article 62, UCMJ, we are bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous." *Pugh*, 77 M.J. at 3 (citing *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004)). We review a military

judge's decision to suppress evidence for an abuse of discretion. *Becker*, 81 M.J. at 488 (citing *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017)). If the military judge does not put her findings and analysis on the record, she will be accorded less deference. *United States v. Finch*, 79 M.J. 389, 397 (C.A.A.F. 2020) (quoting *United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014)). Here, the military judge did not make written findings and conclusions or directly cite any relevant law, including the Fifth or Sixth Amendments. However, she did articulate the factual basis and reasoning behind her decision to suppress the interview and she did assess whether Appellee's waiver met the proper legal standard of knowing and intelligent. Therefore, I believe we owe her some deference.

The Fifth Amendment to the United States Constitution guarantees that no suspect "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "[T]he right to have counsel present at the [custodial] interrogation is indispensable to the protection of the Fifth Amendment privilege." *Miranda v. Arizona*, 384 U.S. 436, 469 (1966). "[A]n individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting privilege we delineate today. . . . [T]his warning is an absolute prerequisite to interrogation." *Id.* at 471.

Military Rule of Evidence (M.R.E.) 305 protects a suspect's Fifth Amendment right to counsel. M.R.E. 305(d) states that when a person subject to custodial interrogation requests an attorney, military counsel must be provided at no expense to the person and must be present before the interrogation can proceed.

Marine Corps policy grants the Chief Defense Counsel discretionary authority to detail defense counsel as determined necessary "to servicemembers pending investigation . . . by any law enforcement agency, when detailing authority reasonably believes that such an investigation may result in court-martial, nonjudicial punishment, or adverse administrative action." CDC Policy Memorandum 3.1D para. 3.a.(4) (Nov. 6, 2020). The Marine Corps Legal

Support and Administration Manual does not include a time line for detailing defense counsel for servicemembers pending investigation. It does note a time line for those against whom charges have been preferred. Dep't of the Navy, Marine Corps Order 5800.16-V3, Legal Support and Administration Manual para. 011004 (Feb. 20, 2018). However, the fact that there is no formal detailing procedure prior to preferral of charges does not negate an accused's right to consult counsel or have counsel present before an interrogation can proceed. Here, Appellee was advised of and invoked his right to consult with counsel and to have counsel present before deciding to proceed with further questioning.

A determination of whether any waiver of counsel was knowing and intelligent depends upon "the particular facts and circumstances surrounding that case." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (internal quotation marks omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The accused must have "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (internal quotation marks omitted) (citation omitted). "The government must show waiver by a preponderance of the evidence." *Mott,* 72 M.J. at 330 (citing *Berghuis*, 560 U.S. at 384). I am not convinced that, under the circumstances of this case, the Government has met this burden.

The Supreme Court has established that an accused does not have a Fifth Amendment right to counsel when he initiates communication with law enforcement. *Edwards*, 451 U.S. at 485. I agree with the majority that Appellee's second interview was self-initiated and noncustodial. However, we cannot divorce Appellee's choice to contact NCIS of his own accord from the multiple attempts to consult with an attorney that preceded it. Appellee was under the mistaken belief that he could *only* receive or consult with military counsel once charges were preferred. This information contradicts M.R.E 305(d) and its provision that military counsel must be provided, if requested, for a custodial interrogation. And it contradicts Appellee's right, outlined

in the rights advisement utilized by NCIS, to consult with an attorney prior to such an interview. Appellee did sign a rights form prior to the second interview with law enforcement that indicated he understood he was entitled to appointed counsel during an interview with law enforcement and that he waived that right. But it is difficult to conclude this waiver was knowing and intelligent. The record indicates that neither the DSO nor the SJA communicated to Appellee that he had the right to consult with counsel prior to a custodial interview with NCIS. As noted earlier, there is no evidence that Appellee ever spoke to a lawyer and the SJA's information communicated through the SNOIC that the DSO could not help him was just wrong. It was simply not true that he could not talk to a military defense attorney until after charges have been preferred, even if that is when the formal detailing procedure customarily occurs.[2]

We view Appellee's waiver of his right to counsel against "the particular facts and circumstances surrounding that case," including the misleading information he received from his command and the DSO. *Edwards*, 451 U.S. at 482 (internal quotation marks omitted) (citation omitted). Even though Appellee had no right to counsel when he initiated an interview with NCIS, a proper understanding of his overall rights most likely would have influenced his decision to go to them on his own. It is hard to argue that he made a fully informed decision on how to proceed. Appellee claimed that he "reached out [to law enforcement] because [he] believed that [he] could not do an interview with military counsel present." He "only thought that [he] could do an interview with an attorney present if [he] hired

---

[2] I remain skeptical that a Marine staff sergeant presenting himself to a judge advocate at the DSO, explaining to that lawyer that he was under investigation for fraud against the United States and forgery and that the NCIS had recently interviewed him, would have simply been turned away. If Appellee was turned away after consulting counsel, I would expect some evidence to be entered into the record indicating why and by whom such a determination was made. The Government had the burden to show that Appellee consulted with counsel and they have not done so.

a civilian attorney." It is clear that he did not properly understand the scope of his right to counsel. Given this mistaken belief, Appellee did not possess the necessary "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it" to knowingly and intelligently waive the right. *Berghuis*, 560 U.S. 382-83 (internal quotation marks omitted) (citation omitted).

This might be a different case if Appellee's mistaken belief had been of his own making. It also might be a different case if the record showed that he in fact consulted counsel, was told that the DSO was not going to provide counsel at any subsequent meetings with investigators and that it might not be in his best interest to meet with them without counsel present, and, armed with this advice, he still decided to initiate contact with NCIS for a second interview. But, based on the record before us, this is not what happened. The majority's decision to assume a critical fact not in evidence, namely, that Appellee actually spoke with a lawyer, is inconsistent with our mandate to review the evidence "in the light most favorable to the party which prevailed at trial." *Pugh,* 77 M.J. at 3.

In addition, as pointed out by the Chief Judge in his dissent, we must acknowledge this Court's footnote in *Mott* that, "[c]onsistent with our precedents, we note that in the military justice system the accused's right to counsel—and the requirement of knowing and voluntary waiver—are not limited to *custodial* interrogation." 72 M.J. at 330 n.10. This footnote implies that a servicemember's right to counsel extends to noncustodial interview situations such as Appellee's voluntary decision to speak with NCIS. The footnote cites *United States v. Delarosa,* 67 M.J. 318, 320 (C.A.A.F. 2009), and its statement that law enforcement "are required to provide rights warnings prior to interrogating a member of the armed forces if that servicemember is a suspect, irrespective of custody." I agree with the majority opinion that this is an inaccurate statement of the law. There is no indication that *Delarosa*, which involved a suspect facing custodial interrogation, intended to confer a right to counsel beyond the circumstances at issue in that

case and beyond what is guaranteed by the Fifth and Sixth Amendments and M.R.E. 305. *Id.* at 322. The footnote in *Mott*, if interpreted literally, would create a major, and I believe, unintended expansion of our case law surrounding the right to counsel.[3] However, even if this Court now clarifies that the footnote is inaccurate and not binding, at the time the military judge made her ruling it was part of the existing case law. In assessing the military judge's decision, we must take into account our own muddled version of the law rather than simply casting it aside as something the military judge would and should have known was inapplicable dicta.

The certified issue this Court has been asked to address includes both the question of Appellee's right to counsel at a noncustodial interview and his right to silence at such an interview. The majority rightly concludes that "the protections afforded by Article 31(b), UCMJ, were applicable during Appellee's second interview." *Flanner*, __ M.J. at __ (15). It seems obvious to me that Appellee's mistaken belief about the scope of his right to consult with counsel and to have counsel present influenced his decision to initiate contact for the second interview and to waive his right to remain silent at that interview. The military judge properly assessed the facts and circumstances surrounding Appellee's decision to waive his right to counsel. Given his

---

[3] For instance, in *United States v. Davis*, the United States Army Court of Criminal Appeals recently cited the *Mott* footnote and stated that:

> [T]he distinction between custodial and non-custodial interrogation in the military context appears irrelevant. Our superior court extends counsel rights . . . to accused who are only subject to mere non-custodial interrogation.
>
> . . . Even with the explicit words in Mil. R. Evid. 305(e)(3)(A) requiring 'custodial interrogation' . . . we nevertheless apply CAAF's precedent.

No. ARMY 20160069, 2018 CCA LEXIS 417, at *11, 2018 WL 3996488, at *4 (A. Ct. Crim. App. Aug. 16, 2018) (unpublished).

mistaken understanding of the scope of that right and the Court's inconsistency regarding the applicable law, reviewing the evidence in the light most favorable to Appellee, the military judge did not abuse her discretion in determining that Appellee's waiver was not knowing and intelligent. For these reasons, I respectfully dissent.